AMELIA S. SIMONTON

*v.*

NORA GODSEY *et al.*

·*Opinion filed June 18, 1898.*

SPECIFIC PERFORMANCE—*when oral contract to re-convey land will be specifically enforced.* An oral contract whereby the grantor is to retain possession until the grantee has consummated a certain trade for the property, in which case he agrees to pay the purchase price, or, in case he is unable to make the trade, to re-convey, may be specifically enforced against the grantee's heirs upon his failure to perform, where the grantor retains possession claiming ownership, which the grantee in his lifetime admits.

APPEAL from the Circuit Court of Effingham county; the Hon. SAMUEL L. DWIGHT, Judge, presiding.

GILMORE & GILMORE, and R. C. HARRAH, for appellant.

HENRY & HOUSTON, and BELL & BELL, for appellees.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This was a bill in equity, brought by Amelia S. Simonton in the circuit court of Effingham county, against Nora Godsey and Vesta Simonton, for the purpose of vacating and setting aside a deed executed by the complainant to Joseph C. Simonton on the 7th day of January, 1891, which purported to convey the north-east quarter of the south-east quarter of section 16, township 7, north, range 5, east of the third principal meridian, in

Effingham county.    The bill also prayed that the title to
the land be confirmed in complainant.    The grantee in
the deed, Joseph C. Simonton, died intestate in January,
1893, leaving Nora Simonton, (now Nora Godsey,) his
widow, and Vesta R. Simonton, an only child.

There is no controversy in regard to the facts upon
which the complainant relied for the relief prayed for
in her bill.    The facts established by the evidence intro-
duced on the hearing for the complainant may be briefly
stated.    The land in controversy originally belonged to
Hiram P. Simonton, who died intestate in 1887.    A de-
cree was subsequently obtained in the county court of
Effingham county to sell the land to pay debts, and on
the 10th day of December, 1887, the land was sold to
Henry W. Wernsing.    Subsequently Henry W. Wernsing
sold and conveyed the land to the complainant, Amelia
Simonton.    In January, 1891, Joseph C., William T. and
Henry Simonton were operating a saw-mill which they
owned.    They were desirous of obtaining a steam boiler
for the mill from one Barbee, who proposed to trade the
same to them for the forty-acre tract of land.    In order
to be able to make the trade, Joseph C. procured the
execution of a deed on January 7, 1891, by his mother,
the said Amelia, to him, whereby her title to the said
premises was conveyed to him, with the agreement that
if the trade with Barbee should be consummated he and
his brothers would pay her $350 for the land and secure
its payment by a mortgage upon the mill property, of
which the boiler would become a part, and if the trade
with Barbee should fail, then Joseph C. was to re-convey
the land to his mother, and it was a part of the ·agree-
ment that she should not surrender to him the possession
of said premises in the event of the failure to make such
trade.    It further appears that after the deed had been
executed the creditors of Barbee took possession of the
boiler and the trade fell through.    The land was never
surrendered to Joseph C., but possession was retained by

complainant, who paid all taxes and claimed to own the property. After the trade was abandoned Joseph C. did not claim the land, but, on the other hand, as the evidence shows, stated to different persons that the land belonged to his mother and was to be re-conveyed to her.

The Statute of Frauds was set up and relied upon by the defendants to the bill. A parol contract for the sale of lands cannot be enforced in a court of equity unless there has been a performance of the contract by the purchaser. But the law is well settled that a court of equity may enforce the specific performance of a parol contract for the conveyance of land, notwithstanding the Statute of Frauds, where the consideration has been paid and the purchaser has taken possession. (*Rumsey* v. *Liston*, 25 Ill. 114). Here, under the contract, no purchase money was to be paid by the complainant. She therefore occupied the same position she would occupy if she had agreed to pay a certain sum of money and had paid it. As to the possession of the land, it was expressly agreed that she was to hold the possession, under the contract, until her son, Joseph C. Simonton, had concluded the trade with Barbee. She was therefore in possession of the land under the parol agreement. Complainant therefore established by the evidence a parol contract, under which Joseph C. should re-convey the land to her. She also established possession under the contract and payment of the purchase money. These facts having been established, equity required a decree in her favor.

It is, however, claimed that H. P. Simonton, the father of Joseph C., agreed to give the land to his son, and under the agreement the son built a log cabin on the land, cleared "a potato patch" and lived on the land for a short time. The conduct and declarations of Joseph C. in regard to the land are all so inconsistent with the theory that he became the owner by gift from his father that it cannot be adopted. Moreover, there is evidence in the record tending to prove that after complainant purchased

the land from Wernsing, who bought at administrator's sale, the heirs of Hiram P. Simonton, including Joseph C., united in a quit-claim deed conveying whatever interest they had in the premises to the complainant. If, therefore, Joseph C. ever had any title under an arrangement with his father, (which we do not think was established by the evidence,) that title passed by his deed to the complainant. The fact, too, that Joseph C. was made a party to the proceeding to sell the land by the administrator of his father's estate for the payment of debts, and failed to set up any title in himself, is a strong circumstance tending to prove that he held no title to the land by gift from his father.

In conclusion, after a careful consideration of all the evidence we are of opinion that the court erred in rendering a decree dismissing the bill. The decree will be reversed and the cause will be remanded, with directions to enter a decree in favor of complainant, as prayed for in the bill.

*Reversed and remanded.*