JOHN D. GALLAGHER *et al.*

*v.*

JOSEPH A. NORTHRUP.

*Opinion filed June 23, 1905.*

1. ESTOPPEL—*what essential to application of doctrine of equitable estoppel.* In order that the doctrine of equitable estoppel may be applied, it is essential that the party claiming the estoppel should not only have relied upon the acts or representations of the other, but that he was destitute of knowledge and of any convenient and available means of knowledge of the true facts.

2. NOTICE—*possession of tenants is notice of landlord's rights.* Possession of tenants is constructive notice of the legal or equitable rights of the landlord under whom they hold and to whom they pay the rent, even though the legal title stands in another's name.

3. STATUTE OF FRAUDS—*when equity may enforce parol trust.* A voluntary conveyance by father and mother to their son for the sole purpose of his re-conveying the legal title to the mother creates a parol trust, which, though voidable under some conditions, is not void, and, where the mother continues to retain possession of the property, a court of equity will protect her rights and enforce the trust notwithstanding the Statute of Frauds.

CARTWRIGHT, C. J., and HAND, J., dissenting.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

W. P. BLACK, for appellants:

The possession of the premises in question by Winifred Gallagher was notice to all the world of her equitable interest therein. *Rupert* v. *Mark,* 15 Ill. 540; *Franz* v. *Orton,* 75 id. 100; *Smith* v. *Jackson,* 76 id. 254; *Whitaker* v. *Miller,* 83 id. 381; *Strong* v. *Shea,* 83 id. 575; *Coari* v. *Olsen,* 91 id. 273; *Redden* v. *Miller,* 95 id. 336.

This property not being the property of John D. Gallagher, but being, while he held the legal title, held by him in trust for his mother, was not subject to his debts and could not have been taken on execution against him, and for that reason the conveyance by him to his mother cannot be complained of by his creditors. *Hart* v. *Bank,* 33 Vt. 253; *Bank* v. *Findley,* 131 Ind. 225; *Beck* v. *Schultz,* 32 Atl. Rep. 695; *Caffal* v. *Hale,* 49 Iowa, 53.

Where a debtor receives title to property for the purpose of conveying it to another, he acquires no such interest therein as would make the execution of the trust upon which he received it, whether so constituted as to be legally binding or not, fraudulent as against his creditors. *Carter* v. *Porter,* 55 Me. 337; *Silvers* v. *Potter,* 48 N. J. Eq. 539; *Carver* v. *Todd,* 48 id. 102; *Bristow* v. *Norris,* 112 N. C. 671; *Bank* v. *Dwelley,* 72 Me. 223; *White* v. *Carpenter,* 2 Paige, 217.

The Statute of Frauds cannot be invoked by a creditor. *Kelly* v. *Kendall,* 118 Ill. 650; *Wilson* v. *Mason,* 158 id. 313.

The statute was sought to be availed of by creditors in *Wright* v. *Jones,* 105 Ind. 17; *Bank* v. *Findley,* 131 id. 225; *Rickards* v. *Cunningham,* 10 Neb. 417; *Cahill* v. *Bigelow,* 18 Pick. 369; *Cresswell* v. *McCaig,* 11 Neb. 222.

WHEELER, SILBER & ISAACS, for appellee:

A resulting trust cannot arise from a voluntary conveyance in favor of the grantor. *Stevenson* v. *Crapnell,* 114 Ill. 191; *Biggins* v. *Biggins,* 133 id. 211; *Sturtevant* v. *Sturtevant,* 20 N. Y. 39; *Williams* v. *Williams,* 180 Ill. 364; *Mayfield* v. *Forsyth,* 164 id. 32; *Benson* v. *Dempster,* 183 id. 304.

Where there is an express trust there cannot be a resulting or implied trust. *Kingsbury* v. *Burnside,* 58 Ill. 310.

An express trust is by the Statute of Frauds required to be evidenced by some memorandum in writing. Starr & Cur. Stat. chap. 59, sec. 9; *Stevenson* v. *Crapnell,* 114 Ill. 19; *Biggins* v. *Biggins,* 133 id. 211; *Williams* v. *Williams,* 180 id. 364; *Benson* v. *Dempster,* 183 id. 304; *Mayfield* v. *Forsyth,* 164 id. 35.

Joseph A. Northrup became a creditor of John D. Gallagher at the time John D. Gallagher signed the replevin bond and was accepted as a surety thereon. *Bay·*v. *Cook,* 31 Ill. 336; *Benson* v. *Benson,* 70 Md. 253; *Hatfield* v. *Merod,* 82 Ill. 113; *Williams* v. *Banks,* 11 Md. 242; *Thompson* v. *Thompson,* 19 Me. 244; *Howe* v. *Ward,* 4 Greenl. 195; *Carlisle* v. *Rich,* 8 N. H. 14; *Choteau* v. *Jones,* 11 Ill. 318; *VanWyck* v. *Seward,* 18 Wend. 375; *Hutchinson* v. *Kelly,* 1 Rob. (Va.) 135.

The defendant Winifred Gallagher is estopped from asserting ownership to the real estate in question to the prejudice of Joseph A. Northrup, because she joined in the deed with Hugh Gallagher to John D. Gallagher and vested John D. Gallagher with all the legal title and apparent ownership of said property, and permitted the title to remain in him, without objection or request of re-conveyance, from December 30, 1896, to May 8, 1897, and made it possible for John D. Gallagher to qualify on February 13, 1897, as a surety on said replevin bond and become indebted to the complainant upon the faith of such ownership. *Keady* v. *White,* 168 Ill. 76; *Anderson* v. *Armstead,* 69 id. 452; *Maddox* v. *Epler,* 48 Ill. App. 265; *Talcott* v. *Brackett,* 5 id. 60; *Lowentrout* v. *Campbell,* 130 Ill. 503; *Patton* v. *Gates,* 67 id. 164.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This was a bill in chancery filed in the circuit court of Cook county for a decree declaring the title held by one Winifred M. Gallagher to the premises known as No. 5356

State street, Chicago, to be subject to the lien of a judgment which the appellee had obtained against one John D. Gallagher. On a hearing the court awarded a decree according to the prayer of the bill, and the Appellate Court for the First District, on appeal, affirmed the decree. A further appeal was thereupon perfected to this court.

In 1884 the title to the premises here involved was in Hugh Gallagher, husband of Winifred and father of said John D. Gallagher, and so remained until the 30th day of December, 1896, when said Hugh Gallagher and his wife executed a deed conveying the premises to said John D. Gallagher, their son. On the 13th day of February, 1897, said John D. offered himself as surety in a replevin bond to the coroner of Cook county, taken in an action of replevin in which the appellee was defendant, and to qualify as such surety made oath, in an affidavit attached to the bond, that he was the owner in fee simple of said lot; that the same was worth $8000 and that he had personal property of the value of $300. The deputy coroner, who had the writ to execute, relying upon the statements made in the affidavit, accepted him as surety, and he entered the bond with one Billingsly as principal, and the replevin writ was then executed by the coroner. The conditions of the replevin bond were not performed and the appellee instituted an action thereon, and on the 30th day of March, 1900, recovered judgment in the sum of $1008.50 against the obligors, including said John D. Gallagher. Execution was sued out on the judgment and returned *nulla bona.* On the 8th day of May, 1897, about four months after the execution of the deed by said Hugh Gallagher and wife to said John D. and nearly three years before the rendition of the judgment on the replevin bond, the said John D. Gallagher re-conveyed the premises to Winifred, his mother. Hugh Gallagher was then living, but departed this life in November, 1898.

The bill herein was in the nature of a creditor's bill for a decree declaring the re-conveyance of the property by

John D. to his mother, Winifred, to be voluntary and in fraud of the rights of the plaintiff in the judgment, the appellee here. The contention of the mother, Winifred, was, that she was the real and true owner of the property, though title to the premises stood in her husband, and that it was conveyed by her and her husband to their son, John D., as a trustee, to re-convey it to her, in order to transfer the title from her husband, Hugh, to herself. The basis of her claim of title was, that a sum of money which she had earned by her own labor before her marriage was afterwards invested in certain real estate, which was sold and the proceeds again invested in other real estate, which, in turn, was also sold and the proceeds invested in the purchase of the premises here involved. The title to all of the properties was taken in the name of the husband.

We need not consider the controversy as to the legal sufficiency of Winifred's claim of ownership as against her husband, who held the legal title. It was proven, and without dispute, that said Hugh and Winifred conveyed the lot to John D. for the purpose and with the understanding that he should re-convey to his mother, Winifred, the intent of the husband and wife being to divest the husband of title to the premises and to invest the title thereto in the wife, Winifred, the son being merely the medium for the transfer of the title. Hugh Gallagher was not then indebted, and, whether he was the real owner of the property or merely held the title thereto in trust for Winifred, he desired to place the title in his wife, and to accomplish that end he and his wife conveyed the land to the son, to be by the son re-conveyed to his mother, Winifred. Whether Hugh or Winifred was the real owner of the premises, this deed invested John D. with the title thereto.

The trust reposed in the son, John D., that he would re-convey to his mother, was verbal, and for that reason, it is insisted, it was not legally enforcible should John D. interpose the plea of the Statute of Frauds in any suit to enforce the trust. Though verbal the trust was not void, but only

voidable, and if John D. had executed a deed of re-convey-
ance before any third person obtained any rights or equities
because of the apparent ownership or title of said John D.,
it is clear Winifred would have taken by such re-conveyance
an unimpeachable title.

But it is urged that the mother, Winifred, negligently
permitted the title to the premises to remain in said John D.,
and that before he executed a deed of re-conveyance of the
title to her he appeared before the coroner, who then had in
his hands for service a writ of replevin issued in an action
of replevin against the appellee, and in order to induce the
coroner to accept him as a good and sufficient security on the
bond required of the plaintiff in the action he subscribed and
made oath before said coroner to an affidavit, in which he
stated that he was the owner of the premises in controversy
in fee simple and that the premises were worth $8000, etc.;
that the coroner, relying on the statements in the affidavit,
accepted him as surety on said bond; that subsequently the
conditions of the bond were not complied with, and that an
action in the name of the coroner, for the use of the appellee,
was instituted on the bond and judgment entered against
said John D.; that no property could be found belonging to
the said John D. which could be seized to satisfy the judg-
ment, and it is the contention of the appellee that in this state
of case Winifred should be deemed and declared estopped to
receive and retain the premises as against the equity of the
appellee as a judgment creditor of said John D., such equity
being, it is urged, superior to that of Winifred as the grantee
in the deed from John D.

The ground upon which this asserted estoppel must rest
is, that John D. was clothed with the apparent title and own-
ership of the premises by the act of Winifred and that she
negligently permitted him to continue to be the apparent
owner thereof, and that while so the apparent owner of the
premises he made an affidavit asserting that he owned the
full and exclusive title to the premises; that on the faith of

this statement he incurred obligations to the appellee and that the property became impressed with the equity of the appellee, and that Winifred should be estopped to claim the ownership of the property as against the judgment held by . the appellee. Without being understood to assent to the correctness of this proposition as a principle of equity, we remark, as is said by the author of the article on Estoppel in the American and English Encyclopedia of Law, (vol. 11, 2d ed. p. 434,) "that it is essential to the application of the principle of equitable estoppel that the party claiming to have been influenced by the conduct or declarations of another to his injury was himself not only destitute of knowledge of the state of facts, but also was destitute of any convenient and available means of acquiring such knowledge." Or, as the same principle is asserted in 16 Cyc. (p. 738) : "As a corollary to the proposition that the party setting up an estoppel must have acted in reliance upon the conduct or representations of the party sought to be estopped, it is, as a general rule, essential that the former should not only have been destitute of knowledge of the real facts as to the matter in controversy, but should also have been without convenient or ready means of acquiring such knowledge." In *Vail* v. *Northwestern Mutual Life Ins. Co.* 192 Ill. 567, we said: "A party claiming the benefit of an estoppel cannot shut his eyes to obvious facts or neglect to seek information that is easily accessible, and then charge his ignorance to others."

The property consisted of a frame dwelling containing two flats, which were rented for nine dollars each per month. It was proven, and there was no countervailing testimony, that Winifred had claimed to be the owner of the property ever since the husband had the title thereto and that she had ever since then collected all the rents from the tenants; that after the conveyance by herself and her husband to John D. she continued to, as before, collect and receive the rents from the tenants who occupied the flats, and that John D. had never exercised any control over the premises or the tenants,

or had ever collected or sought to collect any rents from the tenants, or had in any manner succeeded to Winifred in the possession of the premises. When the coroner was induced to accept John D. as a surety the premises were in the actual and open possession of the tenants, who were accounting for and paying the rents to Winifred. Had the coroner applied to these tenants he would have been advised of the fact that they held possession as tenants of Winifred and paid rent to her. Having this knowledge the coroner could have readily ascertained, by inquiry of Winifred, the nature and extent of her claim to the premises. The possession of these tenants was therefore notice to the coroner, and to the world, of the rights of Winifred, whether legal or equitable. *Franz* v: *Orton,* 75 Ill. 100; *Smith* v. *Jackson,* 76 id. 254; *Haworth* v. *Taylor,* 108 id. 275; *Beck Lumber Co.* v. *Rupp,* 188 id: 562.

Winifred had conveyed the premises to John D. subject to a secret parol trust and remained in possession by her tenants, and in some jurisdictions it has been held that in such a case possession by the tenants of the grantor does not operate to carry notice that the grantor still claims title or equitable interests in the premises. But such is not the rule established by this court. In *Smith* v. *Jackson, supra,* Jackson, the owner of land, conveyed it by absolute deed to his attorney to secure the attorney as his bail on a criminal bond and to secure the payment of the fees of his attorney, taking back a written defeasance. The deed was recorded but the defeasance was not. When the deed was made Jackson had possession of the land by his tenants and remained in such possession, collecting rents from the tenants after the execution of the deed as before. The attorney conveyed the land to a third person, and we held such purchaser to be charged with notice of the rights and equities of Jackson, and said (p. 258) : "There is nothing unreasonable in a rule which requires a purchaser of land in the open, visible and exclusive possession of a person other than his vendor to make inquiry as to that person's rights, and to take sub-

ject to those rights if he neglects to do so. It has been the rule of all courts, so far as we are aware, that in case of a tenancy the possession of the tenant would amount to constructive notice to a purchaser of such tenant's title." And, referring to the case of *Burnhart* v. *Greenshields,* 9 Moore's P. C. 18, where it was said that there was no authority for the proposition that notice of a tenancy is notice of the title of the lessor, or that a purchaser neglecting to inquire into the title of the occupier is affected by any other equities than those which such occupier may insist on, this court further said: "This doctrine has since been modified in its application, and it has been laid down that the court, in the passages of that judgment in which they speak of the *person in occupation,* did not mean merely the person who, by himself or his laborers, tilled the land, but also meant the person who is known to receive the rents from the persons in occupation of the land.—2 Sudgen on Vendors and Purchasers, (8th Am. ed.) 774, 775; *Knight* v. *Bowyer,* 23 Beav. 609; 2 DeG. & J. 421." *Smith* v. *Jackson, supra,* is cited with approval in *Farmers' Nat. Bank* v. *Sperling,* 113 Ill. 273, and in *Beck Lumber Co.* v. *Rupp, supra,* and the doctrine there announced was declared to be the rule in this jurisdiction.

The suggestion that the doctrine that the possession of a tenant carries notice of the rights of the landlord under whom the tenants hold and to whom the rents are paid can not be practically applied in a large city, where hundreds of tenants are to be found in a single building, etc., may be sufficiently answered, for all of the purposes of this case, by the observation that the building on the premises here involved was a frame flat-building prepared for and occupied by but two tenants.

It is urged, however, that if the coroner had made inquiry of the tenants in possession of the property and had ascertained that they held possession under Winifred and had sought Winifred and inquired of her, nothing would have been disclosed more than that she claimed that John D.

held the title under a parol agreement to re-convey it to her on request; that the coroner would know, as a matter of law, that John D. could, because of the provisions of the Statute of Frauds, refuse to comply with the agreement, and also knew that John D. had made a solemn declaration in writing, under oath, which was, in effect, a repudiation of all obligation on his part to perform the verbal agreement; and, therefore, it is insisted that the coroner might lawfully accept John D. as the owner of the premises and might rely upon his title and ownership as security for the fulfillment of his obligations on the replevin bond. Without conceding that there are not more than one, we point out one fatal error or defect in this contention. The obligation of John D. to re-convey to his mother, Winifred, though voidable was not void, nor do we think that under the facts of the case John D. could have avoided it by invoking the Statute of Frauds. In *Simonton* v. *Godsey,* 174 Ill. 28, Amelia Simonton, who was the owner and had the possession of a tract of land, conveyed it to her son, Joseph C., under a verbal agreement that if the son could dispose of the land in a transaction which he had in contemplation he would pay his mother $350 for the land, and if he should fail to consummate the contemplated trade that he would re-convey the land to his mother. Joseph C. did not make the trade, and about two years thereafter died without having re-conveyed the land. The mother retained possession of the land and filed a bill in chancery against the heirs of Joseph C. to recover the title or cancel the deed which she had made to him. The Statute of Frauds was pleaded by the defendants to the bill and the chancellor sustained the plea. On appeal to this court the decree was reversed and the cause was remanded, with directions to enter a decree as prayed in the bill. We there said: "A parol contract for the sale of lands cannot be enforced in a court of equity unless there has been a performance of the contract by the purchaser. But the law is well settled that a court of equity may enforce the specific performance of a parol con-

tract for the conveyance of land, notwithstanding the Statute of Frauds, where the consideration has been paid and the purchaser has taken possession. (*Ramsey* v. *Liston,* 25 Ill. 114.) Here, under the contract, no purchase money was to be paid by the complainant. She therefore occupied the same position she would occupy if she had agreed to pay a certain sum of money and had paid it. As to the possession of the land, it was expressly agreed that she was to hold the possession, under the contract, until her son, Joseph C. Simonton, had concluded the trade with Barbee. She was therefore in possession of the land under the parol agreement. Complainant therefore established by the evidence a parol contract, under which Joseph C. should re-convey the land to her. She also established possession under the contract and payment of the purchase money. These facts having been established, equity required a decree in her favor." In the case at bar the land was conveyed to John D. without other consideration than his verbal agreement to re-convey to Winifred. John D. never had possession, and under the agreement was not to become entitled to possession, but the possession was to remain in Winifred. The possession remained in the mother, and she was equitably entitled to a re-conveyance without payment of any consideration therefor, and under these circumstances could, as did Mrs. Simonton in the case referred to, invoke the aid of a court of equity to enforce the execution of a deed by John D. The possession of the premises by the tenants of Winifred charged the coroner with notice and knowledge of all facts he could have ascertained on inquiry of her as to her claim thereto. Being advised as to the facts of her claim to the premises, the law would charge him with knowledge that a court of equity would take cognizance of her equities, and would enforce them not only as against John D., but, as she was in possession, against all the world as well.

In response to what counsel have said as to the right of appellants to prosecute this appeal, it is sufficient to say we

considered that question fully on the motion to dismiss the appeal, and on a re-investigation find no reason why the appeal should be dismissed.

The decree of the circuit court and the judgment of the Appellate Court are each reversed, and the cause will be remanded with directions to dismiss the bill.

*Reversed and remanded, with directions.*

CARTWRIGHT, C. J., and HAND, J., dissenting.