Alton Banking and Trust Company, Appellee, v. Alton
Building and Loan Association, Appellant.

178

Opinion filed March 4, 1937. Supplemental opinion filed March 17, 1937.

O'NEILL & O'NEILL, CHAPMAN & MOTZ, all of Alton, and LEIGH M. KAGY, of Springfield, for appellant; I. W. GIBERSON and W. J. CHAPMAN, both of Alton, of counsel.

J. P. STREUBER, of Alton, and WARNOCK, WILLIAMSON & BURROUGHS, of Edwardsville, for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

The Alton Banking and Trust Company obtained a judgment by confession in the city court of Alton against the Alton Building and Loan Association based upon a promissory note. By agreement of parties the judgment was set aside with leave to defendant to plead. The complaint was in the usual form for an action upon a judgment note. The note was for $20,000,

dated July 1, 1933, due on demand with interest at six per cent payable to plaintiff. Attached to the note was a power of attorney authorizing a confession of judgment, including an attorney fee of 10 per cent. The name appearing on the note as the maker was Alton Building and Loan Association, Wm. Feldwisch, pres., W. F. Loellke, sec'y. This note was a renewal of a note dated January 4, 1932, similar in form for the same amount and is claimed to have been signed in the same way as the note in controversy. The defendant answered, under oath, denying the execution of the note, alleging that it was a forgery and that the signature, Wm. Feldwisch, was not Feldwisch's genuine signature, that it had been attached without his authorization, that the name of the defendant had been attached without authorization, that the loan was not made to it and that it had not received any of the consideration.

Plaintiff's reply, also under oath, alleged that the defendant by reason of its conduct was estopped to deny the signature. Defendant made a motion to strike plaintiff's reply, which motion was overruled. Defendant assigns that ruling as error. The facts alleged and those proved are practically the same and for the reasons stated in our discussion of the evidence, we consider the plea insufficient and that the court erred in not sustaining the motion.

The case was tried before the court without a jury and resulted in a judgment for plaintiff for $22,726, which included principal, interest and attorney fees. This appeal is to reverse that judgment.

The name Alton Building and Loan Association as it appeared on the note was placed there by a typewriter. Plaintiff contends the name, Wm. Feldwisch, was his genuine signature or if it was not his genuine signature that it was placed there by Wm. F. Loellke, the secretary of the defendant association, under such

circumstances that defendant was estopped to deny it. The signature Wm. F. Loellke, sec'y, is admitted to be his genuine signature.

There is not much conflict in the evidence as to the main facts. The plaintiff is engaged in a general banking business in Alton. The defendant is a building and loan association with its offices across the street from plaintiff.

Wm. C. Gschwend was cashier and vice president of the plaintiff and had served in that capacity since 1927. He was a stockholder in the defendant association and in the early part of 1931 was elected treasurer and served in that capacity during the transactions surrounding the giving of the note in question. During his term of office he attended but one meeting of the board of directors, that on January 8, 1932. At that time he designated the plaintiff bank as the depository for the defendant. For many years prior to December, 1933, defendant carried a checking account with the plaintiff and had a safety deposit box in the bank. Gschwend, as treasurer, took no active part in the business affairs of the defendant. He took no part in depositing money, writing checks, making financial reports or in the making of the investments. He received $12 per year as compensation and was treasurer in name only.

Wm. F. Loellke started in plaintiff bank as a messenger 25 years ago, held various positions with bank, becoming cashier in 1921 which position he held until January, 1926. In January, 1926, he was elected secretary and trust officer. He held the position of secretary from that date until his death in October, 1933. He was a stockholder and served as a director from January 4, 1929, to the date of his death. In January, 1931, and while holding the office of secretary in plaintiff bank, he was elected secretary of defendant association, and continued as such to the date of his death.

As secretary and director of the plaintiff bank he attended directors' meetings and signed papers, where an attestation by a secretary was necessary. He devoted all his time to his official duties as secretary of the defendant loan association. He had general charge of all the business transactions of the defendant, supervision over the office and all employees. All the office records were made by him or under his supervision. He had charge and direction over the deposit of defendant's money in plaintiff bank, had exclusive access to the safety deposit box in plaintiff bank where defendant kept its securities and valuable papers. He was the contact between the defendant and any one transacting business with it.

Wm. Feldwisch, Sr., was for more than 10 years president of the defendant but did not devote a great deal of his time to its business affairs. For many years he was a depositor in plaintiff bank but held no official connection with it.

Wm. H. Feldwisch, Jr., was assistant secretary, gave a part of his time to the defendant's business and conducted a private insurance business using one of defendant's rooms as an office. Wm. F. Loellke was a son-in-law of Wm. Feldwisch, Sr., and a brother-in-law of Wm. H. Feldwisch, Jr.

For several years, practically all, if not all, of defendant's banking business was conducted with the plaintiff. The checking account was carried on the bank books and in the deposit pass book in the name "Alton Building and Loan Association." Checks payable to defendant were indorsed by a rubber stamp as follows, "Pay W. C. Gschwend, Treasurer, W. F. Loellke, Secretary, pay Alton Banking and Trust Company, Alton Building and Loan Association, W. C. Gschwend, Treasurer." The name of W. C. Gschwend as treasurer did not appear on the deposit records in the bank, or on the pass books. The deposit slips were

made in defendant's office and bore a rubber stamp which read "Wm. F. Loellke, Sec'y, for credit of W. C. Gschwend, treasurer, Alton Building and Loan Association." These rubber stamps were kept in the office and used by Loellke and Lenore Koch, who was an office employee with general duties including that of bookkeeper. The deposit slips and checks were presented to plaintiff for deposit by Loellke or some of the office employees. Checks issued by defendant and drawn on plaintiff were signed by Loellke with Wm. Feldwisch's name attached by Loellke by means of a rubber stamp. The practice in all of these matters had been followed for a number of years prior to January 4, 1932.

From 1919 to January 4, 1932, defendant did, as often as two or three times a year, borrow money from the plaintiff. February, 1930, the board of directors passed a resolution authorizing the president and secretary to borrow $50,000 from plaintiff during the current year. A similar resolution was passed January 8, 1932, only the amount was fixed at $30,000. It does not appear that any resolution was passed covering the period between said dates.

The notes were given to plaintiff to evidence loans prior to January 4, 1932, and they were, with the exception of one, destroyed by Loellke prior to his death but the evidence shows that they were signed "Alton Building and Loan Association. Wm. Feldwisch, Pres., W. F. Loellke, Sec'y," the names of the president and secretary being their genuine signatures. It also appears that preparatory to such loans being made the president and secretary or the secretary alone would tell the bank officials they wanted the loan and as soon as the necessary arrangements and approval had been made the note was given. In all cases except once the money received on such loans was deposited in the checking account of the defendant asso-

ciation. The exception was January 15, 1930; that loan was for $30,000 and a draft was drawn by plaintiff on the Mercantile Trust Company, St. Louis. This was indorsed to J. G. Boggs, trustee, and was signed in the defendant's name with the genuine signatures of Wm. Feldwisch, pres., and John P. Bauer who was secretary at that time.

The evidence tends to show that practically all, if not all, the previous notes were due at a fixed time. It appears that in all the previous loans, Loellke took an active part in the arrangements for the loan and in the deposit of the proceeds to defendant's account.

The circumstances surrounding the making of the original note, January 4, 1932, of which the note in controversy is a renewal, is given by G. S. Gschwend, the cashier, and Mrs. Meeden, an employee of the bank and assistant to the cashier. The original note was not produced, it presumably having disappeared the same time the other notes were destroyed.

The note is described as being on a blank furnished by the bank. It was received by Gschwend and he and Mrs. Meeden made the entries and notations such as were made on notes in the regular course of business. The entries made and the procedure following its receipt is set forth in detail in the evidence but it will suffice to say that it was handled in the regular way including the presentation of it to the board of directors and exhibiting it to the bank examiner for regular inspection. At the request of Loellke, the plaintiff issued and delivered to him four cashier's checks covering the $20,000 loan as follows: First National Bank of St. Louis $8,250; First National Bank of St. Louis $2,950; Mercantile Commerce Bank and Trust Company $6,000; First National Bank and Trust Company in Alton $2,800.

Immediately thereafter Loellke delivered these cashier's checks to the payees named and the proceeds were

used in the payment of his personal obligations to the respective banks named as payees or in establishing a personal credit in the bank which was withdrawn before his defalcations were discovered. Some of his personal indebtedness to these various banks was secured by collateral in the form of State highway bonds. These were returned to Loellke at the time of the payment of his debt and subsequently they were sold by plaintiff at Loellke's request and the proceeds credited to defendant's account in the bank. These bonds were the property of the loan association and plaintiff's theory is that the securities were taken by Loellke from the safety deposit box of the defendant in the bank and used by him as collateral to his personal indebtedness. It is a reasonable inference but it also appears that neither the defendant nor any of its officers knew that Loellke had taken the bonds from the safety deposit box and used them as collateral and did not know it until long after Loellke's death.

On three occasions plaintiff gave notice by mail of interest due and each time it was addressed to Alton Building and Loan Association. All mail coming to the defendant was handled by Loellke and the evidence shows that none of the other officers or employees ever saw any of the notices.

Loellke paid interest three times. The first two were by the check of the defendant payable to plaintiff with the name of Wm. Feldwisch attached by rubber stamp which was the usual practice followed in the issuance of checks. Each of these items was entered by Loellke on the miscellaneous expenditure record and charged against accounts difficult to trace. To balance the account against which they were charged false entries were made in Loellke's handwriting. In one instance the charge being against a particular property owned by the defendant and to balance the account Loellke made an entry increasing the value of the

property the amount of the charge. These entries were not discovered by defendant until after Loellke's death. The third and last payment of interest made in July, 1933, was from Loellke's personal funds.

A few days prior to July 1, 1933, the date of the note in controversy, plaintiff, through one of its employees, told Loellke it should be renewed. After a lapse of a few days one of plaintiff's employees, Mayme Oetken, called at defendant's office and asked Loellke if the note was ready to which Loellke replied it had not been signed but would be in a few days. In a short time thereafter Loellke appeared at the bank with the note and the evidence shows that the entries and notations were made on the records of the bank the same as on the previous note and according to its usual practice.

Mr. Gschwend called Wm. Feldwisch's and Wm. H. Feldwisch, Jr.'s attention to the note sued on in the latter part of December, 1933, and they testified that this was the first information they had of the existence of the note. It also appears that the first that plaintiff or any of the officers or agents knew that the signature was questioned was the first interview they had with the Feldwisches in December, 1933. Upon investigation which then followed the fraudulent schemes and plans of Loellke were revealed. It also appears that the plaintiff made a loan to the defendant February 5, 1932, for $10,000. The proceeds of this loan were deposited to defendant's account and were paid by defendant April 5 following. On February 10, defendant's checking account was overdrawn and Gschwend called Loellke's attention to it. Loellke said they would borrow $10,000 but Gschwend told him they had borrowed to the extent of their allowance which was $30,000, being the $20,000 borrowed January 4 and $10,000 February 5. Loellke said he would see Wm. Feldwisch about it. He returned with a note which he said was signed by Feldwisch, personally. The plain-

tiff accepted it as a loan to Wm. Feldwisch, personally, and credited the proceeds to defendant's account. Plaintiff did not talk to Feldwisch about it and no notice of maturity or interest was sent to him. The note was paid the following May by defendant. Feldwisch denies that he signed such a note and testified that he did not have any knowledge of it until the investigation following Loellke's death.

Plaintiff's officers and employees who were acquainted with the signature of Wm. Feldwisch gave it as their opinion that the name William Feldwisch on the note was his genuine signature. Wm. Feldwisch denied that it was his signature and several witnesses including officers and employees of the defendant testified that it was not his signature. The original note and several admitted signatures introduced for comparison have been certified to this court for our examination. The trial court filed a written opinion which appears in the record and in it he expressly finds that the signature of Wm. Feldwisch was a forgery. From an examination of the exhibits and the evidence, we are satisfied that the finding of the trial court upon that issue is supported by the evidence.

In an action at law where the case is tried before the court without a jury and the court has had an opportunity to hear the witnesses and to observe their demeanor while testifying, it is not within the province of the court of review to substitute its findings of fact for that of the trial court unless the findings of the trial court are manifestly against the weight of evidence. *Wear Proof Mat Co. v. Bastian-Morley Co.*, 268 Ill. App. 455, 464; *Siegel v. Dickinson*, 163 Ill. App. 26; *Kelly v. Chicago City Ry. Co.*, 202 Ill. App. 239.

Since the case is to be treated as a forgery we must look to the rights and liabilities of the parties as they arise out of such a transaction.

Section 23 of the Negotiable Instruments Act, chapter 98, Ill. State Bar Stats. 1935, ¶ 43; Jones Ill. Stats. Ann. 89.043, provides that where a signature is forged or made without authority it is wholly inoperative and cannot be enforced "unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority." It is under this latter sentence that plaintiff seeks to hold defendant liable, contending that defendant's conduct in reference to Loellke's employment and the authority it had conferred upon him covering a long period of time now estops it from denying liability on the note.

Before a party can assert an estoppel against another, two things must be proved: first, that he acted and relied upon the conduct or representation of the party sought to be estopped, and second, that he was without knowledge of such facts and had no ready means by which he could have acquired it. In *Vail v. Northwestern Mut. Life Ins. Co.,* 192 Ill. 567, it is stated "A party claiming the benefit of an estoppel cannot shut its eyes to obvious facts or neglect to seek information that is easily accessible, and then charge his ignorance to others." *Gallagher v. Northrup,* 215 Ill. 563; *Payne v. Hutson,* 264 Ill. App. 508.

The plaintiff, being a banking institution, was under obligation to the defendant, its depositor and customer, to use due and reasonable care to detect fraud and forgery in a case where it was going to advance money on the credit of the defendant.

It does not appear that they made any investigation or asked a single question to determine the genuineness of the signature. It appears that the note was taken and handled in the same way that it would have been had Feldwisch appeared in the bank and in the presence of the cashier or other officers signed his name. Plaintiff knew they were dealing with a corporation that could only act through its officers and agents and

that the source of their authority was through the action of the board of directors and yet no effort was made to trace that authority to its source.

The evidence does not show that defendant through its officers or agents had any knowledge of Loellke's misconduct. Notice to Loellke was not notice to the defendant under that well defined exception, that notice will not be imputed to the principal where the facts authorize the inference that the agent will conceal the information. That is the presumption where it would be detrimental to the agent's interests to disclose the facts. *Merchants Nat. Bank v. Nichols & Shepard Co.,* 223 Ill. 41, 53.

Plaintiff seeks justification for such failure to ascertain the facts by saying that defendant's long established custom of doing business with it was such that no inquiry on its part was necessary.

The custom upon which plaintiff relies must be in reference to transactions like the one in question. A practice of permitting Loellke to have charge of the books, to receive money, to indorse checks, to deposit funds in its account in the bank would not be sufficient to establish an implied authority in Loellke to borrow money on the credit of the defendant.

*Merchants Nat. Bank v. Nichols & Shepard Co.,* 223 Ill. 41, was an action by a bank to recover an overdraft which had been caused by the wrongful issuance of checks by defendant's agent. The court held that the overdraft was to be treated as a loan and on page 49 said, ''The source of authority is the principal, and the power of the agent can only be proved by tracing it to that source in some word or act of the alleged principal. In this case there was no evidence tending to prove that the power to borrow money was an incident of the agency. For such an act as that, an agent must have express authority, or some power must be expressly conferred upon him which cannot be otherwise

executed. The fact that the defendant carried on the sale of its products through the medium of agencies distributed over the country would be no ground for a conclusion that the various agents for making sales of machinery and collecting the proceeds were clothed with authority to borrow money.'' In the same case commenting on *Jackson Paper Co. v. Commercial Nat. Bank,* 199 Ill. 155, the court said, ''The proof that an agent was the superintendent and manager of a mill, having charge of buying material, hiring men and manufacturing and selling paper, did not justify an inference that he had authority to indorse checks, and surely the same facts or the facts in this case would not justify an inference that Harte (agent) had the more unusual power to borrow money and pledge the credit of the defendant.'' No inference that Loellke had power to borrow money could arise from the fact that he was secretary of the defendant association. *Independent Oil Men's Ass'n v. Ft. Dearborn Nat. Bank,* 311 Ill. 278, 282.

Looking to those facts disclosed by the evidence which plaintiff contends establishes a custom, we find that the loans were always for a definite time and for large amounts; the notes were on blanks furnished by the bank; they were recorded and identified on the books of the bank in the same way. Loellke usually arranged for the loan and appeared at the bank with the note when executed and directed the application of the proceeds.

On the other hand the facts shown which distinguish this transaction from the others are that this note was a demand note, that the proceeds were not directed by Loellke to be paid into defendant's account but were under his direction to be paid to other banks.

These differences are in our opinion sufficient to show that the note was not handled in accordance with a long established custom as contended for by plain-

tiff. After plaintiff accepted the note from Loellke and the credit of defendant was pledged to the bank for the amount of the note, the duty then rested upon the plaintiff to see that the $20,000 which it held as the money of the defendant was applied to the uses of the defendant.

The law of this State is that the power of an agent of a corporation to borrow money will not be inferred from a power given to collect, to deposit, to write checks, indorse checks and act as general manager of its business. Nor can it be inferred from the fact that he is authorized to make investments with the corporation's funds or that he was permitted to have sole access to the contents of its safety deposit box.

The plaintiff's officers knew Loellke before he became secretary for the defendant. He had held a trusted and honored position with that institution and apparently fulfilled his duties in that capacity in an honorable and commendable way, so much so that after the termination of his active duties plaintiff continued him as its secretary. Plaintiff made the loan relying more upon what it knew of his past and the services he had performed for it and the confidence and trust they had in him than upon any authority or inferences of power given him by the defendant. Such being the case, the loss arises by reason of its misplaced confidence and its lack of diligence in endeavoring to ascertain the extent of his authority.

Plaintiff contends that the bank was an innocent party and that where one of two innocent parties must suffer by reason of a wrongful act of another the one should bear it who made it possible for it to occur. The trial court adopted that view. The basis of the rule is that there must be two innocent parties. The one who seeks the application of the rule must have used due diligence in the matter and exercised reasonable care to avoid the conditions which gave rise to the injury.

We hold that the evidence does not show that plaintiff exercised due diligence in detecting Loellke's fraud and trickery and that the "two innocent parties" rule has no application. *Paine v. Sheridan Trust & Savings Bank*, 255 Ill. App. 250; *St. Charles Savings Bank v. Edwards*, 243 Mo. 553, 570; *Quincy Mut. Fire Ins. Co. v. International Trust Co.*, 217 Mass. 370, 374.

Defendant urges other grounds for reversal but in view of our holding it is not necessary to consider them.

Under the views expressed we are of the opinion that the defendant was not precluded from defending on the ground that Wm. Feldwisch's name was a forgery and that the court erred in so holding.

Judgment reversed and cause remanded.

*Reversed and remanded.*

## SUPPLEMENTAL OPINION.

Since the filing of the foregoing opinion the parties have filed a stipulation which provides that this court may consider the record as containing all the pleadings and evidence which either party could present on a further hearing, and that a final judgment may be entered in this court. Pursuant to said stipulation, the judgment of the lower court is reversed.

*Judgment reversed.*