Isabel Krick, Plaintiff-Appellant, *v.* First National Bank of Blue
Island, Defendant-Appellee.

(No. 56965;

First District—November 6, 1972.

Alan S. Ganz, of Chicago, for appellant.

Robert H. Joyce and Anthony J. Crement, both of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for appellee.

Mr. JUSTICE BURKE delivered the opinion of the court:

An action brought by Isabel Krick sought to recover stock certificates, bonds (in bearer form), damages and interest, from the First National Bank of Blue Island (hereinafter called the Bank). The court gave judgment finding plaintiff to be lawfully entitled to the stock certificates but not to the bonds, damages or interest. Plaintiff and defendant appeal. The plaintiff contends that the court erred in refusing to award her the bonds and in refusing to award money damages and interest for the detention of her stock certificates. Defendant contends that the court erred in ruling the plaintiff to be entitled to the stock certificates.

Isabel Krick maintained a rented safety deposit box at the First National Bank of Blue Island. On numerous occasions Irving Krick, the plaintiff's brother, entered the box for the purpose of depositing and withdrawing various documents at plaintiff's request.

Between November 9, 1965 and August 16, 1969, plaintiff's brother borrowed from the bank, various sums totaling in excess of $250,000. He secured the payment of these loans by pledging various securities issued in his sister's name which he had feloniously taken from her deposit box at the Bank. It is undisputed that the plaintiff had no knowledge of these loans or of the fact that her brother had used her stocks and bonds as security.

In addition to the deposit box plaintiff maintained a checking account

at the Bank. Plaintiff's brother was authorized to draw checks on that account, which authority he did not exercise. Although plaintiff visited the Bank on numerous occasions and customarily spoke with the Bank's officers, she was not informed of her brother's dealings or of the fact that her securities had been used to secure her brother's loans. Plaintiff did not enter her deposit box between June 1, 1960 and October 3, 1969.

The loans and their renewals were approved by the Bank's officers without examining the securities and without comparing the endorsements with plaintiff's authentic signature available to the Bank. The record indicates that the Bank never requested plaintiff to verify the pledges and that she demanded the return of her documents in October 1969, at which time she was informed of her brother's illicit activities.

The issue of whether Miss Krick is entitled to possession of the stock certificates depends upon the application of Section 8—311 of the Uniform Commercial Code (Ill. Rev. Stat. 1969, ch. 26, par. 8—311), to the factual situation of this case. The statute reads:

> "Par. 8—311. Effect of Unauthorized Indorsement. Unless the owner has ratified an unauthorized indorsement or is otherwise precluded from asserting its ineffectiveness
>
> (a) he may assert its ineffectiveness against the issuer or any purchaser other than a purchaser for value and without notice of adverse claims who has in good faith received a new, reissued or reregistered security on registration of transfer; * * *."

In *Alton Banking and Trust Co. v. Alton Building and Loan Association,* 289 Ill.App. 177, 6 N.E.2d 921, this court construed paragraph 8—311's predecessor, Section 23 of the Negotiable Instruments Act (Ill. Rev. Stat., 1935, ch. 98, par. 43), (See Illinois Code Comment to Section 8—311 of the Uniform Commercial Code) and at 289 Ill.App. 177, 187, 6 N.E.2d 921, 926 stated:

> "Section 23 of the Negotiable Instruments Act, [citation omitted], provides that where a signature is forged or made without authority it is wholly inoperative and cannot be enforced 'unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority.'"

The Bank advances two theories in support of its contention that plaintiff should be precluded from asserting the ineffectiveness of her brother's signature. First, it contends that because she allowed her brother access to the deposit box, and to have his name on her checking account at that Bank, she had clothed him with apparent authority to pledge her securities; second, that she was put on notice of her brother's dealings by virtue

of his endorsement of certain Santa Fe Corporation stock certificates [1] and by the fact that on July 29, 1971, she ratified the forgery of her signature on certain stock certificates of the Commonwealth Edison Company. We do not agree that plaintiff should be estopped from asserting the ineffectiveness of her brother's forgeries.

Again the language of the court in the *Alton* case, is pertinent to the decision in the present case. At 289 Ill.App. 177, 187, 6 N.E.2d 921, 926, the court stated:

> "Before a party can assert an estoppel against another, two things must be proved: first, that he acted and relied upon the conduct or representation of the party sought to be estopped, and second, that he was without knowledge of such facts and had no ready means by which he could have acquired it.
>
> * * *
>
> The plaintiff, being a banking institution, was under obligation to the defendant, its depositor and customer, to use due and reasonable care to detect fraud and forgery in a case where it was going to advance money on the credit of the defendant.
>
> It does not appear that they made any investigation or asked a single question to determine the genuineness of the signature."

The court continuing at 289 Ill.App. 177, 190-191, 6 N.E.2d 921, 927, further stated that:

> "Plaintiff contends that the bank was an innocent party and that where one of two innocent parties must suffer by reason of a wrongful act of another the one should bear it who made it possible for it to occur. The trial court adopted that view. The basis of the rule is that there must be two innocent parties. *The one who seeks the application of the rule must have used due diligence in the matter and exercised reasonable care to avoid the conditions which gave rise to the injury.*" (Emphasis added.)

The facts of the present case fall within the scope of the rule enunciated in the *Alton* case. It is significant that the Bank had the means

---

[1] On August 1, 1966, Irving Krick pledged 1200 shares of plaintiff's Atchison, Topeka and Santa Fe Railway stock to the bank, forging her signature thereon. Subsequently, she was notified by Santa Fe that its name was to be changed to Santa Fe Industries and that she should therefore return her stock certificates. She thereafter requested Irving to procure the old certificate from her safety deposit box. He informed the bank that the certificate was needed for a change of name and it was given to him without any substitute security. When Irving Krick returned that stock certificate to his sister, he explained that he had signed it by mistake. That certificate for 1200 shares bore no indication that it had been pledged to the bank. When she received a new certificate of Santa Fe Industries stock she requested her brother to place it in her safety deposit box. On January 9, 1969, and without her knowledge or consent, he forged her signature on that certificate and pledged it to the bank.

by which it could readily verify the authenticity of the endorsements appearing on plaintiff's securities, and that it negligently failed to do so. The fact that Irving Krick had access to his sister's deposit box and was thereby able to obtain possession of her securities, does not give rise to a cloak of apparent authority. Possession of personal property by an agent does not confer upon him ostensible authority to sell. A sale under these circumstances does not confer title as against the principal even though the buyer is a *bona fide* purchaser. (*Lawcock v. United States Trotting Association*, 55 Ill.App.2d 211, 204 N.E.2d 802.) The evidence that plaintiff believed her brother when he advised her that he had signed her name by mistake on the Santa Fe stock and that she ratified the forgery on the Commonwealth Edison stock does not control the issues herein because these acts were not relied upon by the Bank at the time it extended credit to plaintiff's brother.

■■ We agree that the court was correct in awarding the bearer bonds to the Bank. Paragraph 8—301 of the Uniform Commercial Code (Ill. Rev. Stat. 1969, ch. 26, par. 8—301), provides:

> "Paragraph 8—301. Rights Acquired by Purchaser;   *   *   *.
> (1) Upon delivery of a security the purchaser acquires the rights in the security which his transferor had or had actual authority to convey   *   *   *.
> (2) A bona fides purchaser in addition to acquiring the rights of a purchaser also acquires the security free of any adverse claim."

Paragraph 8—302 of the Uniform Commercial Code defines a *bona fide* purchaser as one who purchases, "*   *   * for value in good faith and without notice of any adverse claim who takes delivery of a security in bearer form   *   *   *." In the case at bar, the Bank was a "bona fide purchaser" of the bonds (see Ill. Rev. Stat. 1969, ch. 26, par. 1—201 (32 (33)), and entitled to them.

Lastly, plaintiff has urged that the court erred in refusing to allow damages and interest. We do not agree.

■■■ The general rule in Illinois is that on an action to recover personal property, the court, in addition to awarding possession, may also award damages in order to compensate the plaintiff for the loss sustained as the result of being deprived of the use of his property. This is consistent with the rule that compensatory damages are awarded for the purpose of making the injured party whole, but not for the purpose of giving him a profit on the transaction. *Santiemmo v. Days Transfer, Inc.*, 9 Ill.App.2d 487, 133 N.E.2d 539.

■■ In *Cottrell v. Gerson*, 296 Ill.App. 412, 16 N.E.2d 529; aff'd, 371 Ill. 174, 20 N.E.2d 74, a suit to recover personal property, the court held that where detained property has a usable value, the measure of damages

is the reasonable net rental thereof. In the case at bar, although the plaintiff was prevented from physically possessing her stock certificates, the record does not reflect that she suffered any monetary loss as a result. It is undisputed that during the time the Bank held the certificates she received the dividends paid thereon. There is nothing in the record indicating that she was deprived of any rights as a shareholder in any corporations wherein she owned stock. The fact that the market value of her securities declined while in the possession of the Bank is irrelevant as the record is devoid of any evidence that she had, between June 1, 1960 and October 3, 1969, desired to sell her certificates. Were we to allow the plaintiff the damages and interest she requests, we would in effect be awarding her a profit which she would not have realized, irrespective of her brother's dealings, thus defeating the underlying principle of awarding compensatory damages to make the injured party whole.

For these reasons the judgment is affirmed.

Judgment affirmed.

GOLDBERG, P. J., and LYONS, J., concur.