JOHN P. NISBET *et al.*, Plaintiffs-Appellees, *v.* JOHN YELNICK, Defendant-Appellant.

First District (2nd Division)   No. 83—155

Opinion filed May 22, 1984.

---

*This opinion was adopted as the opinion of the court prior to the death of Mr. Justice Wilson.

Joseph A. Malek & Associates, of Chicago (Joseph A. Malek and Sean M. Lazzari, of counsel), for appellant.

Louis F. Cainkar, Ltd., of Chicago (Vincent Cainkar and Michael G. Cainkar, of counsel), for appellees.

JUSTICE PERLIN delivered the opinion of the court:

Plaintiffs filed in the circuit court of Cook County a two-count complaint against defendant for the latter's alleged defective construction of plaintiffs' residence. Count I alleged a breach of the implied warranty of habitability; count II alleged a breach of the express warranty contained in the contract entered into between the parties which provided, in part, "[defendant], being the seller herein *** does *** guaranty the aforesaid premises to be free from defects in materials and workmanship for the period of one year from and after the completion date of said residence." The complaint alleged various defects in the home, including cracks in the foundation and walls, loose and cracked mortar, broken windows and doors.

After the trial, the jury returned verdicts in favor of plaintiffs on both counts of the complaint, awarding damages of $22,200 for the cost of repairing the home on count I and $5,000 for loss of use of the home on count II. Defendants bring this appeal.

On appeal, defendant contends that plaintiffs failed to introduce evidence demonstrating that defendant caused the defects in the home; that loss of use is not a proper measure of damages in this action; and that because plaintiffs, in fact, only alleged a single cause of action, the court erred in giving the jury two verdict forms and in entering judgment on two separate verdicts.

At trial, defendant was called by plaintiffs as an adverse witness. He testified: in September 1972 he entered into a written contract with plaintiffs to build their new home. Pursuant to the contract, he oversaw the construction and supervised and coordinated the various subcontractors. Plaintiffs "never" mentioned any problem with cracks in the foundation "at the closing or one year after." Defendant was not advised of any problems with the foundation until "four years after closing." At that time defendant observed two cracks in the foundation wall which were "maybe an eight or sixteenth" of an inch wide. He saw some cracked bricks on the exterior of the home. Such cracks are not unusual. Defendant marked the cracks so as to be able to determine whether they moved. He returned several times to observe the cracks. He did not fix them. On cross-examination defendant stated that he stopped returning to plaintiffs' home when plaintiffs sued him.

Plaintiff, Mr. Nisbet, testified: he first saw a crack in the foundation wall "approximately one month" after moving into the house. He called defendant who advised him that it was normal for a house to settle. After a few more months, more cracks appeared, and water began entering the home through the cracks. When defendant did not come out to the house, Nisbet dug around the foundation and tarred

the cracks. This temporarily stopped the water seepage, but within several months water again entered the house through the cracks. Plaintiff identified several pictures of the cracks in the foundation and walls of the home.

Mr. Nisbet further testified that within one year of moving into the house, water and mud flooded into the basement and covered one-quarter of its surface. The basement floor began sinking in several places. These problems prevented plaintiffs from carrying out their plans to remodel the basement and to use it as a recreation room. Mice and insects entered the home through the cracks in the foundation. When advised of this condition, defendant came to the house and assured plaintiffs that he would correct the problems. He did not return again for almost a year and never corrected the defects. Thereafter doors and windows would not close; exterior walls began to crack and water continued to leak into the house. Plaintiffs could only use the basement to wash clothing and for storage.

Amelia Nisbet's testimony was substantially similar to her husband's.

Edward J. Sewers, a building contractor, testified that it would cost $22,500 to repair plaintiffs' home.

Thomas E. Holser, a real estate appraiser, estimated that the market value of plaintiffs' home, if in proper condition, was approximately $80,000 but because of the enumerated defects, its value was approximately $50,000.

R. Francis Staley, a consulting engineer called by defendant, testified that the cost of repair figure offered by Mr. Sewers was "excessive" but that Staley "couldn't really give an accurate figure" of the total cost of repairing the home. However, he then estimated that cost to be approximately $10,000.

In closing argument, plaintiffs' attorney asked the jury to award plaintiffs $22,500 for the cost of repairing the home (count I) and $2.50 per day for 2,888 days for their loss of use of the basement, for a total of $7,200 (count II). The jury returned verdicts of $22,200 on count I and $5,000 on count II.

Defendant argues that plaintiff failed to meet his burden of proof because "throughout the entire trial there was no evidence presented by plaintiff as to what caused the defects." Plaintiffs respond that the facts presented to the jury supported a reasonable inference that the defects were, in fact, caused by defendant. Moreover, plaintiffs argue that they were not required to prove the specific cause of the defects.

■■ ■ The nature and extent of the defects in plaintiffs' home were described in detail. The defects were identified by plaintiffs' wit-

nesses as being structural in nature. Causation, being a question of fact, may be established by, or inferred from, circumstantial evidence. (*Walsh v. Dream Builders, Inc.* (1970), 129 Ill. App. 2d 280, 264 N.E.2d 247; *Livingston Service Co. v. Big Wheels, Inc.* (1981), 96 Ill. App. 3d 591, 421 N.E.2d 1042.) In our opinion, the record discloses sufficient evidence from which the jury could attribute to defendant the defects which appeared soon after the home's construction.

Defendant's two arguments as to damages are related, and can be considered together. Defendant, citing *Park v. Sohn* (1982), 89 Ill. 2d 453, 433 N.E.2d 651, contends that in Illinois the sole proper measure of damages for an action for breach of implied warranty of habitability is the cost of correcting the defective conditions or, when the cost of repair is so great as to be disproportionate to the benefit to plaintiff, the correct measure of damages is the amount by which the defective conditions have reduced the value of the property. Defendant argues that because the sole measure of damages for this cause of action is as above stated, the trial court erred in instructing the jury with regard to damages for "loss of use" and in giving the jury verdict forms for both loss of use and cost of repair.

Plaintiffs answer that "loss of use" is a proper element in determining damages under the facts of this case and also that defendant has waived this allegation of error by failing to raise it below.

■ Our review of the record indicates that defendant did, in fact, raise this issue in the trial court, and we therefore find that the issue was not waived.

We agree with defendant that in an action for breach of the implied warranty of habitability, Illinois courts have generally held that the measure of damages is the cost of correction or, alternatively, the reduction in value of the property caused by the defects. (*Park v. Sohn* (1982), 89 Ill. 2d 453, 433 N.E.2d 651.) However, we are aware of no case which has rejected "loss of use" as an additional measure of damages in a factually appropriate case. Loss of use has been applied in at least one instance where the defects in the home were so extensive that the entire home was, in fact, uninhabitable. (*Durant v. Surety Homes Corp.* (7th Cir. 1978), 582 F.2d 1081.)[1] Further, our supreme court, in recognizing this cause of action in *Petersen v. Hubschman Construction Co.* (1979), 76 Ill. 2d 31, 389 N.E.2d 1154, likened it to an action for breach of warranty under the Uniform Commercial Code.

---

[1]This approach has been adopted also in Washington State's model statute. See *Washington's New Home Implied Warranty of Habitability—Explanation and Model Statute*, 54 Wash. L. Rev. 185, 220 (1978).

The code defines a buyer's damages to include consequential damages resulting from the seller's breach to include:

"(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

(b) injury to person or property proximately resulting from any breach of warranty." Ill. Rev. Stat. 1983, ch. 26, par. 2—715.

In Illinois damages for loss of use are generally allowed where plaintiff has been deprived of the use of personal property. The measure of damages in such instance is the reasonable rental value of similar property for the period of deprivation. (See *Kalal v. Goldblatt Brothers, Inc.* (1977), 53 Ill. App. 3d 109, 368 N.E.2d 671; *Plesniak v. Wiegand* (1975), 31 Ill. App. 3d 923, 335 N.E.2d 191; *Krick v. First National Bank* (1972), 8 Ill. App. 3d 663, 290 N.E.2d 661.) Our research reveals but one case in Illinois involving injury to a building in which loss of use damages were addressed; the court there indicated such was an appropriate measure of damages. *City of Chicago v. Rust* (1904), 117 Ill. App. 427.

As stated in *Roark v. Musgrave* (1976), 41 Ill. App. 3d 1008, 1011-12, 355 N.E.2d 91:

"It is hornbook law that an award of damages aims first and foremost at compensation. The goal is to place the injured party as nearly as reasonably possible in the same position that he would have occupied had injury not been inflicted. The measure of damages is peculiarly a question for the trier of fact, based on a proper consideration of all relevant facts. So-called 'rules' as to the proper measure of damages in a particular type of case are guides only, and should not be applied in an arbitrary, formulaic, or inflexible manner. [Citations.]"

Furthermore it has been held:

"When a landowner has shown that he has suffered compensable injury, we believe it is necessary to examine the exact interest harmed before answering the question of what amount is necessary to fully compensate for the harm." *Myers v. Arnold* (1980), 83 Ill. App. 3d 1, 7, 403 N.E.2d 316.

In the instant case, while the damages for cost of repair will allow plaintiffs to make the necessary corrections to the home, this alone does not serve to place plaintiffs in the position in which they would have been but for the wrongful acts of defendant. It does not recompense plaintiffs for their loss of use of a substantial portion of their home for several years.

■ While proof of the measure of damages for the loss of use of a portion of a house may be difficult, such difficulty is not a sufficient basis to deny damages. "A party cannot be permitted to escape liability for his wrongful acts simply because the plaintiff's damages are difficult to prove. The 'best evidence' which the nature of the subject matter will permit in such cases is sufficient to sustain a jury award. [Citations.] This is clearly the correct rule where the verdict of the jury is not excessive. [Citations.]" (*Tri-County Grain Terminal Co. v. Swift & Co.* (1969), 118 Ill. App. 2d 313, 322, 254 N.E.2d 311.) Absolute certainty concerning the amount of damages is not required to justify recovery where existence of the damages is established. The evidence need only tend to show a basis for computation of damages with a fair degree of probability. *Posner v. Davis* (1979), 76 Ill. App. 3d 638, 395 N.E.2d 133.

■ In our opinion, an award for damages for loss of use of a home, or portion thereof, in addition to damages for the cost of correcting the home's defects, is proper when supported by the evidence.

■ Although more precise evidence relating to the value of the plaintiffs' basement, such as evidence of the size of the basement in relation to the remainder of the home, or current apartment rental values in the area, might have been introduced here, we find the evidence presented by plaintiffs did provide a reasonable basis for the award of damages for loss of use of the basement. Plaintiffs testified to mortgage payments of $280 per month. In addition to the basement, the home has three bedrooms, living room and dining area. One reason for plaintiffs' purchase of the home was having a basement room in which their two children, then six and three years old, could play. Plaintiffs testified that prior to buying the home, they paid a rental of $150 per month for an apartment.

At closing argument, plaintiffs' attorney stated that in light of these figures, and the generally known rental cost of a modest motel room, a damage award of $2.50 per day—or approximately $75 per month—for plaintiffs' loss of use of their basement would be reasonable. Based on this evidence, the jury determined that plaintiffs had suffered damages in the amount of $5,000 and rendered this award. We believe the damages here awarded, in light of the evidence, was not error.

For these reasons, the judgment appealed from is affirmed.

Affirmed.

STAMOS and DOWNING, JJ., concur.