LOGAN ROARK, JR., Plaintiff-Appellee, *v.* LARRY MUSGRAVE,
Defendant-Appellant.

Fifth District   No. 75-528

Opinion filed September 2, 1976.

C. William Fechtig, of Carmi, for appellant.

Robert H. Rath, of Harrisburg, for appellee.

Mr. PRESIDING JUSTICE KARNS delivered the opinion of the court:
Defendant Larry Musgrave appeals from a judgment of the Circuit Court of Hardin County awarding plaintiff-appellee Logan Roark, Jr., actual damages of $4,280.18 and punitive damages of $1,000 for defendant's wrongful cutting and removal of some 140 trees from plaintiff's land. The only issues raised here are whether the court below applied an improper measure of damages, and whether it erred in assessing punitive damages.

The complaint was in two counts, and was framed in the language of an action in trespass. The first count alleged that defendant came upon plaintiff's property and cut and removed large quantities of timber without plaintiff's knowledge and permission; that young timber growth on the land was damaged and destroyed, resulting in erosion of the land; that fences were damaged and destroyed; and that trimmings from the cutting and removal of the timber interfered with the natural drainage of the land. The second count incorporated by reference the allegations of the first; added the allegation that the defendant's acts were done knowingly, intentionally, and maliciously; and prayed judgment for punitive or exemplary damages.

Plaintiff Roark is a 49-year-old school psychologist living in Taylorville,

Illinois. He was reared in Southern Illinois, and anticipates building a home on the 120 acres he owns north of Elizabethtown when he retires at age 55. He bought the property in 1970. The land is rough and hilly, and presently accessible only by horse or four-wheel-drive vehicle. No one has ever asked his permission to harvest the timber on the land, nor has he sought any buyers. He would not want to sell a single tree out of it, he testified, because of his interest in ecology:

> "I think too many of our natural resources are being destroyed, and I'm more aware of it in the central part of the State than down here and I'd like to see more of this timber kept intact, with more of this rough land where there could be deer and where you can fish and hunt or whatever."

The plaintiff called three expert witnesses, each of whom had viewed the land. The district forester for the State department of conservation testified that he had examined the property at the request of plaintiff; he found fences cut, a road worn by heavy equipment going in and out, and timber, apparently the largest and best trees, cut in a diagonal swath across the northernmost 40-acre tract. He estimated the volume of the timber taken, which was mostly oak, at 24,826 board feet.

A real estate broker and appraiser testified without objection that in his opinion the property had been depreciated "from an aesthetic or recreational point of view" by removal of the trees. Over a general objection, he estimated the depreciation at $20 an acre to the 40 acres from which the trees were taken.

A forestry teacher who also operated a private forestry consulting firm testified that he found the boundaries between the tract from which the trees were taken and the adjoining property readily discernible. He testified without objection that the value of the timber removed was $1,390.18; that the cost of hiring the necessary men and equipment to clean up the tree trimmings left behind would be between $2,000 and $3,000; and that the cost of preventing further erosion from a 250-foot-long skid trail left on plaintiff's property would be about $90.

The defendant, a logger and timber dealer from Fairfield, Illinois, testified that he had purchased timber from the owner of land adjacent to the plaintiff's property and contracted with another man to do the actual cutting. He admitted that he had cut fences and hauled logs across the 40-acre tract from which the trees were taken, but contended that he did not know at the time that the trees were being taken from plaintiff's land.[1] He had been told by the landowner who had sold him timber that a four-strand barbed-wire fence surrounded his property, but he never attempted to ascertain exactly where the boundary lines lay. Defendant

---

[1] Our Brother Jones informs us that the traditional response to confrontation with the fact that one had "accidentally" cut someone else's trees was that "Grandma always told us those trees were on our land"—hence the Southern Illinois expression "to grandma timber."

acknowledged that the man cutting the trees had no way of knowing the location of the timber defendant had purchased other than by what defendant told him. Another neighboring landowner eventually told defendant that he was cutting trees from the wrong land.

On appeal defendant contends that plaintiff is entitled to recover only the value of the timber plus the difference between the fair cash market value of the injured land before and after the injury. Defendant does not quarrel with $1,390.18 as the value of the timber removed, but argues that plaintiff failed to establish depreciation by competent evidence in that the only evidence was the real estate appraiser's conclusion of a loss in "aesthetic" and "recreational" value and that nothing should have been allowed for the cost of cleaning up and restoring the property. Finally, defendant argues that his conduct, while a "regrettable mistake," was not malicious, and therefore punitive damages should not have been imposed.

■■ We first note that as a general rule an objection to the admission and consideration of evidence not properly made at trial may not be made for the first time in a court of review. (*Dailey v. Meredith*, 56 Ill. App. 2d 230, 205 N.E.2d 640 (5th Dist. 1965); *Questelle v. Hamp*, 9 Ill. App. 3d 802, 293 N.E.2d 137 (5th Dist. 1973).) At trial the defendant's only objection to any of the evidence on damages was a general objection to a question asking for the real estate appraiser's opinion of the amount of depreciation caused by the removal of the trees. As our supreme court recently re-emphasized:

> "Objections must be sufficiently specific to make the ground for objection known to the trial court. A general objection will not preserve the question for review on appeal. * * * 'Parties cannot make a general objection upon the trial below, and then insist upon a specific objection in this court, which was not specified at all in the trial court.' " (*Dixon v. Industrial Com.*, 60 Ill. 2d 126, 132, 324 N.E.2d 393, 396 (1975).)

Wigmore refers to this requirement of specificity as the "cardinal principle" of objections to evidence. 1 Wigmore, Evidence §18, at 332 (3d ed. 1940); see also McCormick, Evidence §52 (2d ed. 1972).

Even had objections been properly made and preserved, however, we do not believe that the trial court applied an improper measure of damages. It is hornbook law that an award of damages aims first and foremost at compensation. The goal is to place the injured party as nearly as reasonably possible in the same position that he would have occupied had injury not been inflicted. The measure of damages is peculiarly a question for the trier of fact, based on a proper consideration of all relevant facts. So-called "rules" as to the proper measure of damages in a particular type of case are guides only, and should not be applied in an arbitrary, formulaic, or inflexible manner. See, *e.g.*, 25 C.J.S. *Damages*

§84, at 923 (1966); Annot., 69 A.L.R.2d 1335, 1336, 1340 (1960); *Standard Oil Co. v. Southern Pacific Co.*, 268 U.S. 146, 69 L. Ed. 890, 45 S. Ct. 465, (1925).

■■ Defendant-appellant speculates that the trial court arrived at its award of actual damages as follows: market value of timber wrongfully cut and removed, $1,390.18; cost of repairing the damage to the land caused by the removal of the trees (cleaning up debris and preventing further erosion from the skid trail), $2,090; and depreciation in the value of the property for aesthetic and recreational purposes, $800. Even assuming that defendant is correct in his speculation, we find no evidence of duplication nor any improper element of damages.

An expert witness put the cost of removing debris and repairing the slash in the range between $2,090 and $3,090; the trial court's award is consistent with the lower of these estimates. The market value of the timber was not disputed. Another expert witness, the real estate agent, testified that his opinion of the depreciation in the value of this land, held for recreational and possible residential purposes, was based solely on the aesthetic effect of most of the larger trees throughout the 40-acre tract having been removed.

■■ Although of course we have no way of knowing what issue defendant meant to raise by his general objection to this testimony at trial, he states on appeal that plaintiff failed to establish depreciation by competent evidence. We disagree. The opinion of an expert is permitted because he has peculiar knowledge or experience not commonly possessed which renders his opinion an aid to the trier of fact in deciding the case. (*Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.*, 49 Ill. 2d 118, 273 N.E.2d 809 (1971).) The test of the competency of an expert witness is whether he discloses sufficient knowledge of his subject matter to entitle his opinion to go to the trier of fact. (*Piacentini v. Bonnefil*, 69 Ill. App. 2d 433, 217 N.E.2d 507 (1st Dist. 1966).) We cannot find that the trial court abused its discretion in admitting the testimony of this real estate broker, who was experienced in appraising similar properties in the area and had first-hand knowledge of the condition of the property in question.[2]

---

[2] The general objection may have been aimed at the consideration of damage to aesthetic values, by analogy to the general rule in condemnation cases. We do not find the analogy apt. Condemnation implicates the State, acting under legislative authority. "Trespass, on the contrary, is a remedy between private parties, and thus a rule rather calculated fully to make whole the wronged suitor should be entertained." (*Huber v. Serpico*, 71 N.J. Super. 329, 345, 176 A.2d 805, 812-13 (1962). Compare *Barker v. Publishers' Paper Co.*, 78 N.H. 571, 103 A. 757, 759 (1918): "In trespass for cutting and carrying away shade trees, the owner is not limited to their value for lumber. ° ° ° He recovers what their aesthetic value was.") We agree with the principle expressed in *Gilman v. Brown*, 115 Wis. 1, 7, 91 N.W. 227, 229 (1902):

■■ The real estate agent testified that his appraisal did not consider any elements of damage to the land other than the depreciation in aesthetic value caused by the removal of the trees. He did not purport to be testifying as to the total depreciation in value. We think that all the evidence introduced by plaintiff, including that as to value of the removed timber and the cost of removing tree trimmings and preventing erosion, was a proper mode of proving the depreciation in value of his land. That is, we believe that the total damages proved by plaintiff were in fact equivalent to the difference in value of his property before and after the defendant's wrongful acts. In short, the proof conformed to the traditional rule.

To the extent that the cases cited by defendant suggest that proof must be introduced as to the *market value* of the land immediately before and the *market value* after the injury (*Feather River Lumber Co. v. United States*, 30 F.2d 642 (9th Cir. 1929); *Jones v. Sanitary District of Chicago*, 252 Ill. 591, 97 N.E. 210 (1911); *Collins v. Illinois Central R.R. Co.*, 161 Ill. App. 95 (4th Dist. 1911); *Shrigley v. Chicago & Eastern Ry. Co.*, 158 Ill. App. 473 (4th Dist. 1910)), we do not think that they reflect the preferable, less rigid, modern view. (See cases cited in Annot., 69 A.L.R.2d 1335, especially §§15-16 (1960), and later case service.) Those cases indicate that evidence of the contemplated use of the land is admissible as bearing on the diminution in its value, and that it is proper to consider the particular purpose for which the land was purchased. See, *e.g., Watson v. Jones*, 160 Fla. 819, 36 So.2d 788 (1948).

We conclude, therefore, that the trial court's award of actual damages was reasonably calculated to compensate the innocent absentee landowner for the injuries sustained by him as a direct result of defendant's wrongful act. We would note that in a number of jurisdictions courts have allowed plaintiffs to recover the cost of replacing damaged or destroyed trees where that was practical. (See, *e.g., Morris v. Ciborowski*, 113 N.H. 563) 311 A.2d 296 (1973); *Thatcher v. Lane Construction Co.*, 21 Ohio App. 2d 41, 254 N.E.2d 703 (1970); *Huber v. Serpico*, 71 N.J. Super. 329, 176 A.2d 805 (1962); *Samson Construction Co. v. Brusowankin*, 218 Md. 458, 147 A.2d 430, 69 A.L.R.2d 1326 (1958); see also Restatement (Second) of Torts §929(1)(a), Comment *b*, at 225-26 (Tent. Draft No. 19, 1973).) A recent Illinois appellate case, while finding the allowance of

---

"° ° ° An owner of real estate has a right to enjoy it according to his own taste and wishes, and the arrangement of buildings, shade trees, fruit trees, and the like may be *very important to him* ° ° ° and the modification thereof may be an injury to his convenience and comfort in the use of his premises which fairly ought to be substantially compensated ° ° °. ° ° ° The owner of property has a right to hold it for his own use as well as to hold it for sale, and if he has elected the former he should be compensated for an injury wrongfully done him in that respect, although that injury might be unappreciable to one holding the same premises for purposes of sale."

replacement or restoration cost "more equitable" than the before-and-after market-value rule, held that the former approach had not been recognized in Illinois. (*First National Bank v. Amco Engineering Co.*, 32 Ill. App. 3d 451, 335 N.E.2d 591 (2d Dist. 1975).) (Compare, however, the opinion of the same court in *Pierce v. DeJong*, 13 Ill. App. 3d 889, 300 N.E.2d 782 (2d Dist. 1973), where plaintiffs were allowed to recover the replacement cost of trees damaged by defendant's obstruction of the natural flow of surface water.)

In any event, plaintiff here did not seek to recover the cost of restoring his land to its original condition; that would have required the replanting of 140 large trees, and the cost of such a project might well have been unreasonable. But we agree with plaintiff's argument that to limit his recovery here to the commercial value of the timber taken would have been to reduce the function of the trial court to that of supervisor of a forced sale, against the will of the plaintiff and without regard to the substantial injury done to the land. The actual damages assessed were calculated to afford to plaintiff, as completely as possible under the circumstances, that certain remedy in the laws for wrongs to his property guaranteed by our constitution. Ill. Const. 1970, art. I, §12.[3]

Neither can we disagree with the trial court's conclusion that an award of $1,000 as punitive damages was justified here. It is true, as defendant states, that punitive or exemplary damages are not a favorite of the law. Justified by their deterrent effect, they may be recovered only in cases where the wrongful act complained of is characterized by wantonness, malice, oppression, or circumstances of aggravation. (*Knierim v. Izzo*, 22 Ill. 2d 73, 174 N.E.2d 157 (1961).) As our supreme court recognized in the leading case of *Eshelman v. Rawalt*, 298 Ill. 192, 131 N.E. 675 (1921), courts ought to exercise a high degree of watchfulness against the characterization of defendants' acts with degrees of enormity and turpitude which the law does not affix to them.

■■ It may also be true that defendant was not malicious in taking the timber from plaintiff's land, at least in the lay sense of the word "malicious." We think, however, that there was sufficient evidence of aggravating circumstances to support the award of punitive damages in defendant's failure to make any real attempt to ascertain the boundaries of the property from which he was to cut trees. Defendant, who described himself as a logger and timber dealer by occupation, cut fences to enter upon plaintiff's property, and cut and removed trees from the

---

[3] Note that the 1970 constitution expresses the growing environmental concern of the people of this State. Article XI guarantees to every individual the right to a "healthful environment," defined as "that quality of physical environment which a reasonable man would select for himself were a free choice available ° ° °." See Ill. Const. 1970, art. XI, §§1 and 2; Report of the General Government Committee, 6 Record of Proceedings, Sixth Illinois Constitutional Convention 696, 701.

farthest corner of the 40-acre tract. His acts evidenced a reckless disregard of plaintiff's property rights.

■■ We note that ownership of remote woodland properties valuable primarily by virtue of their location and natural beauty is common in Southern Illinois. Large tracts of tall trees add to the desirability of land owned for recreational or aesthetic purposes. But the very remoteness of such properties which gives them much of their value also makes them vulnerable to unscrupulous or reckless timber cutters. We therefore conclude that the trial court's award of punitive damages here, "to deter not only this defendant but any other defendant who unlawfully cuts timber," was fully justified by the law and the facts.

For the foregoing reasons, the judgment of the Circuit Court of Hardin County is affirmed.

Affirmed.

JONES and G. J. MORAN, JJ., concur.