PAULA RODRIAN, Plaintiff-Appellee, v. JAMES A. SEIBER, Defendant and Third–Party Plaintiff-Appellant (Morski and Associates, Inc., Plaintiff and Third-Party Defendant).

Fifth District   No. 5—88—0582

Opinion filed February 26, 1990.

William C. Evers III, of Collinsville, for appellant.

Ripplinger & Dixon, of Belleville, for appellee.

JUSTICE RARICK delivered the opinion of the court:

Defendant, James A. Seiber, appeals from a verdict of $20,000 actual damages in favor of plaintiff, Paula Rodrian, after a jury trial in the circuit court of St. Clair County. We affirm.

In 1946, plaintiff and her husband purchased some 15 acres of land in Caseyville, Illinois. While the Rodrians lived on a portion of this land, they set aside the majority of the property to serve as a wildlife and bird sanctuary because of their mutual love for nature. They therefore allowed the land to remain in its natural state, untouched by civilization, resulting in a jungle of vegetation to some observers.

In March of 1981, defendant acquired the property adjacent to plaintiff's land and decided to build a road along the property line. He contracted to have a survey done of his real estate in May, the same month Mr. Rodrian passed away, but because of the onset of winter and the difficulty in locating the boundary line, the survey was not completed. Defendant began constructing his road without the completed survey, and in so doing, bulldozed across the corner of plaintiff's property, clearing a path some 170 feet long and 40 feet wide. He also cut through approximately 150 feet of fencing and 17 fence posts marking the boundary line. Plaintiff notified defendant of his trespass on her land in April of 1982. According to the testimony of

plaintiff's son and his girlfriend, however, work continued on the roadway on plaintiff's property for at least two months after defendant was contacted by plaintiff. Plaintiff accordingly filed suit against defendant in trespass seeking actual damages for negligent trespass and actual and punitive damages for intentional trespass to her property. Plaintiff's experts testified at trial the cost of restoring the land to its original contour was $18,000, while the value of the trees removed was approximately $14,500. Defendant, on the other hand, established through the use of plaintiff's 1981 appraisal for inheritance tax purposes that the value of the entire 15-acre tract improved with a home amounted to only $41,600. He also brought out at trial that surrounding real estate sold for approximately $1,000 an acre at the time of the trespass, and the area damaged comprised only one-fourth of an acre. In addition, defendant's experts testified the trees had no timber value and were good only for firewood. The jury awarded plaintiff $20,000 in actual damages but declined to award any punitive damages. In connection with Seiber's third-party claim against the surveyor, Morski & Associates, Inc., the jury found no liability on the part of the surveyor for defendant's trespass. This finding with respect to the third-party claim is not before us on appeal.

Defendant first argues on appeal that the trial court erred in refusing to strike the testimony of plaintiff's expert as to the value of the trees removed from or damaged on plaintiff's land during construction of the roadway. Defendant believes the expert's opinion was not based upon facts adduced at trial and thereby amounted to nothing more than pure conjecture and speculation. We disagree.

■■ ■ It is true that regardless of how skilled or experienced an expert may be, the expert may not state a judgment or opinion based on conjecture. (See *Royal Elm Nursing & Convalescent Center, Inc. v. Northern Illinois Gas Co.* (1988), 172 Ill. App. 3d 74, 79, 526 N.E.2d 376, 379. See also *Lewis v. Mount Greenwood Bank* (1980), 91 Ill. App. 3d 481, 486-87, 414 N.E.2d 1079, 1083-84.) And, admittedly, plaintiff's expert found it difficult to appraise the value of the trees removed because he was not able to examine those specific trees. He did, however, after viewing the entire property, inventory a comparable area on which to base his value of the trees. He also acknowledged a different area could have different types of trees in differing conditions, but an expert opinion couched in terms of probabilities or possibilities based upon certain assumed facts is not improper or inadmissible. (See *Nicholas v. City of Alton* (1982), 107 Ill. App. 3d 404, 408, 437 N.E.2d 757, 760.) The jury was fully aware of any "infirmities" in the expert's opinion, and it was for the jury to determine his

credibility. (See *Myers v. Arnold* (1980), 83 Ill. App. 3d 1, 9-10, 403 N.E.2d 316, 322-23.) The mere fact that plaintiff's son testified he saw approximately 40 trees bulldozed down does not mean the expert's calculations of 55 trees in the area were improper or contradicted by the evidence. Plaintiff's son merely guesstimated the number of trees down; he did not actually count them. More importantly, such differences merely go to credibility, not admissibility. We see no error in the court's refusal to strike the expert's testimony in this instance.

■ Defendant also argues the jury's verdict was excessive and erroneous. Defendant points out the value for the entire 15-acre tract and house was approximately $42,000. The area damaged comprised only one-fourth of an acre on the most remote corner of the land. Yet, the jury awarded plaintiff $20,000, almost half the value of the whole tract, for a very small fraction of the land. Defendant believes the jury should have awarded only a fraction of the value of an acre of land, or one-fourth of $1,200, the price he paid per acre for the adjacent land. We disagree. Defendant, in effect, is attempting to force a sale of plaintiff's land. What defendant fails to recognize is that plaintiff was not holding onto her land for investment purposes. It was her home and her desire and attempt to preserve nature and wildlife. As this court previously noted in *Roark v. Musgrave* (1976), 41 Ill. App. 3d 1008, 355 N.E.2d 91:

> "An owner of real estate has a right to enjoy it according to his own taste and wishes, and the arrangement of buildings, shade trees, fruit trees, and the like may be very important to him *** and the modification thereof may be an injury to his convenience and comfort in the use of his premises which fairly ought to be substantially compensated ***. The owner of property has a right to hold it for his own use as well as to hold it for sale, and if he has elected the former he should be compensated for an injury wrongfully done him in that respect, although that injury might be unappreciable to one holding the same premises for purposes of sale." 41 Ill. App. 3d at 1013 n. 2, 355 N.E.2d at 95 n.2, quoting *Gilman v. Brown* (1902), 115 Wis. 1, 7, 91 N.W. 227, 229.

See also *Myers*, 83 Ill. App. 3d at 7, 403 N.E.2d at 321; *Arras v. Columbia Quarry Co.* (1977), 52 Ill. App. 3d 560, 565, 367 N.E.2d 580, 583-84.

■ An award of damages is intended to compensate an injured party for the wrong done to him. The goal is to place that injured party as nearly as reasonably possible in the same position he would

have been had the injury not been inflicted. (*Roark*, 41 Ill. App. 3d at 1011, 355 N.E.2d at 94.) While generally the measure of damages for injury to realty is the difference in the fair market value of the property immediately before and after the injury (see *Arras*, 52 Ill. App. 3d at 564, 367 N.E.2d at 583), such "rules" serve as guidelines only. They are not to be applied in an arbitrary, formulaic or inflexible manner in every instance so as to deprive an injured party of just compensation. (*Roark*, 41 Ill. App. 3d at 1011, 355 N.E.2d at 94. See also *Myers*, 83 Ill. App. 3d at 7, 403 N.E.2d at 321.) We believe there has never been a more appropriate case to follow such dictates than under the circumstances presented to us here. The trial court quite properly tendered to the jury a damage instruction encapsulating all of the opinions on damage to real estate from trespass currently in effect in Illinois. The jury, being properly instructed, arrived at a verdict which it believed adequately compensated plaintiff for the wrong done to her land. We see no basis for disturbing that verdict in this instance. (See *Zueck v. City of Nokomis* (1987), 160 Ill. App. 3d 140, 145, 513 N.E.2d 125, 129.) To restore the damaged land to its original contours alone will cost some $18,000, to say nothing of "replacing" all of the trees and vegetation. An award of $20,000 is not so unreasonable or so disproportionate to the value of the land in light of the harm done to justify reversal in this instance. See *Myers*, 83 Ill. App. 3d at 7-8, 403 N.E.2d at 321; *Pierce v. DeJong* (1973), 13 Ill. App. 3d 889, 892, 300 N.E.2d 782, 785. See also *Zosky v. Couri* (1979), 77 Ill. App. 3d 1033, 1034, 397 N.E.2d 170, 171; *Arras*, 52 Ill. App. 3d at 565-66, 367 N.E.2d at 584. But see *First National Bank v. Amco Engineering Co.* (1975), 32 Ill. App. 3d 451, 454, 335 N.E.2d 591, 593.

Defendant's third and final argument on appeal is the trial court erred in failing to direct a verdict in his favor on plaintiff's count for willful and wanton misconduct when there was no direct evidence on the record to support such a verdict. Defendant takes issue with the court's denial of his motion particularly because such denial allowed for evidence of his net worth to be placed before the jury, thereby informing it he had sufficient assets to pay a large award on the negligence count.

While our courts previously have held that an intentional trespass, under a mistaken claim of right, does not entitle the landowner to punitive damages, it is equally true that when a wrongful act is accompanied by aggravating circumstances such as willfulness, wantonness, malice or oppression, punitive damages are recoverable. (See *Wetmore v. Ladies of Loretto* (1966), 73 Ill. App. 2d 454, 467, 220 N.E.2d 491, 497-98.) Willful and wanton misconduct is that act in-

tentionally done or that act taken, under the circumstances known, in reckless or conscious disregard of probable injurious consequences. (*Albers v. Community Consolidated No. 204 School* (1987), 155 Ill. App. 3d 1083, 1085, 508 N.E.2d 1252, 1254.) Here, plaintiff introduced evidence at trial that defendant not only crossed over plaintiff's property line prior to obtaining the outcome of the survey ordered after being informed the boundary line had not yet been located because of dense vegetation, but also crossed over the property line repeatedly after being advised by plaintiff of his trespass on her land. Such evidence was more than sufficient to submit the issue of punitive damages to the jury. (See *Roark*, 41 Ill. App. 3d at 1014-15, 355 N.E.2d at 96.) And, because punitive damages were still at issue, evidence of defendant's net worth was admissible. The trial court committed no error in denying defendant's motion for a directed verdict on plaintiff's count for willful and wanton misconduct in this instance. See *Roark*, 41 Ill. App. 3d at 1014-15, 355 N.E.2d at 96; *First National Bank*, 32 Ill. App. 3d at 455, 335 N.E.2d at 594.

For the aforementioned reasons, we affirm the judgment of the circuit court of St. Clair County in favor of plaintiff.

Affirmed.

CHAPMAN and HOWERTON, JJ., concur.