(No. 87-CC-3668–)

GEORGE WOLFF, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed August 8, 1991.*
*Opinion filed September 30, 1994.*

BUTLER, RUBIN, NEWCOMER, SALTARELLI, BOYD & KRASNOW (STEPHANIE LEIDER, of counsel), for Claimant.

ROLAND W. BURRIS, Attorney General (GREGORY ABBOTT, Assistant Attorney General, of counsel), for Respondent.

## OPINION

BURKE, J.

Claimant was the owner of a parcel of land approximately 20 acres in size. The northern boundary of his property abuts U.S. Highway Route 20. Until August 12, 1985, a row of Siberian Elm trees, running parallel to Highway 20, was situated on his property. The trees were in this location in excess of 30 years. On August 12, 1985, a certain number of trees were removed by Henrickson Tree Service. The trees were cut down and removed pursuant to a contract with the State.

Claimant did not count the number of trees on his property prior to August 12, 1985, and did not know the number of trees in existence. He estimated that there were 27 live trees and 5 trees remained; therefore, he concluded that 22 trees were removed. Claimant did not know the exact diameter or height of the trees.

Mr. Kramer, a commercial arborist licensed by the State of Illinois as a tree expert and certified by the Illinois Arborist Association was offered as an expert arborist on behalf of Claimant. Mr. Kramer visited Claimant's property and observed the five remaining Siberian Elm trees. The remaining trees were approximately 30 years old and stood 40 to 45 feet tall. The diameters of the remaining trees were in the range of approximately 22 to 26 inches as measured 4½ feet from the ground. He stated that the trees were alive, healthy, fully foliated and growing.

Mr. Kramer prepared a valuation report at the request of the Claimant. He assumed that 25 trees were removed. However, Mr. Kramer based his valuation on the destruction of only 22 trees and appraised the value of the trees at a total of $34,750. He based this value on the size, condition, location, purpose and function the trees served relative to the property. The value was based upon functional purpose rather than abstract or aesthetic purposes. The purposes were to screen the view of the highway from the residence for privacy concerns, block the north wind, control drifting snow, dirt and dust filtration, noise abatement, control of soil erosion and to offer definition to the property. Mr. Kramer stated that he could only locate 14 physical stumps and used a probe rod to determine the existence of some stumps.

The State did not dispute that some of the Claimant's trees were wrongfully removed and destroyed. The State and Claimant disagree on the following:

(a) The number of trees removed and destroyed from Claimant's property;

(b) The method by which damages are to be determined for the unauthorized removal and destruction of the trees.

Mr. Joseph Kostur of the Illinois Department of Transportation did not have personal knowledge of the number of trees removed, but a diary of tree removals was kept by the Department of Transportation which indicated that only 16 trees were removed.

The job diary is kept by the Illinois Department of Transportation (IDOT) on a regular basis. The diary is required to be kept on every contract in accordance with a booklet provided by the Federal Highway Federation. The diary also indicated the diameter of the 16 trees removed. Mr. Kostur stated that the trees are measured because contractors are paid by the number of trees removed and paid by the diameter of the trees. For IDOT tree removal purposes, the diameter of a tree is measured two feet above the ground.

Claimant asserts that the testimony of a commercial arborist expert is sufficient evidence for the Court to award damages. The expert determined the value of the trees removed in the following manner. He measured the five remaining trees to determine the range of diameters for the destroyed trees. He then calculated a base value utilizing a table prepared by an industry trade group in association with the United States Department of Labor. The table is widely accepted and establishes a base value of a tree using the number of square inches in a cross section measured 4½ feet above ground. The base value was adjusted after consideration of the tree species, condition, function and location. He determined that the value of 22 live Siberian Elms removed by State was $34,750.

This Court finds that 16 trees, or 72.7% of the total claimed, were removed. Therefore, the appropriate damages following Claimant's method of calculations would be $25,272.73 or 72.7% of $34,750.

Respondent, citing *Roger v. Enzinger* (1950), 339 Ill. App. 376, 89 N.E.2d 853 (2nd Dist.), asserts that Claimant's method of proving damages is prohibited. Respondent's position is that the only proper method of measuring damages is the loss of fair market value of the land after the removal of the trees. The Respondent asserts that the Claimant is entitled to nominal damages in the sum no greater than $1,000 because he failed to prove any legally recognizable measure of damages.

Respondent asserts that assuming *arguendo* that Claimant's method of proving damages is proper, the amount of damages is much less than the $34,750 claimed because Claimant's expert overestimated the number and size of the trees cut. Respondent also argues that the expert utilized too long a life expectancy for the trees because the State subsequently took title to the pertinent property through its eminent domain powers. Neither party cites cases relating to this last argument.

The valuation of damages should be determined at the time of the injury without speculations of the unknown future destruction of the property based upon a subsequent occurrence, *i.e.* condemnation. Both parties cite *First National Bank of Des Plaines v. Amco Engineering Co.* (1975), 32 Ill. App. 3d 451, 335 N.E.2d 591 (2nd Dist.). Claimant cites the case for the proposition that the appropriate measure of damages is the diminution in value of the property as a result of the taking of trees. Respondent cites the case to support its proposition the Claimant should receive nominal damage. The *First National Bank of Des Plaines* case involved the wrongful removal of trees

and the primary issue was the proper measure of damages. In that case, plaintiff contended that the proper measure of damages for the wrongful removal of trees was the cost of replacing the trees or the cost of restoring the property to a reasonable approximation of its condition prior to the trespass. Defendants maintained that the measure of damages is depreciation of the value of the realty due to the removal. The *First National Bank of Des Plaines* court stated that, "As a general rule, the measure of damages for injury to realty is the difference between the fair market value of the property before and after the injury to the premises." (335 N.E.2d at 593.) The Court, citing *Rogers v. Enzinger*, noted that the general rule has been applied to the destruction of ornamental or shade trees.

The *First National Bank of Des Plaines* court made a further observation. The Court stated that:

"Where the property injured, although part of realty, has a value which can be accurately determined without reference to the freehold, the recovery may be for the property in its severed condition and not for the difference in the value of the land before and after the defendant's misconduct. (Citations omitted.) Other jurisdictions, in dispensing justice between the parties allow the reasonable cost of replacing the trees or for the reasonable cost of restoring the property to approximate, as near as possible, its original condition. (Citation omitted.) This, it would seem is the more equitable rule, but Illinois law has not, to date, recognized such rule." *Id.* at 593.

Claimant's reply brief cites two cases, *Roark v. Musgrave* (1976), 41 Ill. App. 3d 1008, 355 N.E.2d 91 (5th Dist.) and *Myers v. Arnold* (1980), 83 Ill. App. 3d 1, 403 N.E 2d 316 (4th Dist.). In *Roark v. Musgrave*, the Court upheld the trial court's order where plaintiff was awarded damages for defendant's wrongful cutting and removal of trees from plaintiff's land. The plaintiff presented evidence of damages that indicated the depreciation in the value of the property but did not utilize the method of establishing the difference between the fair market value of the land before and after the injury. The *Roark* expert

testified to net loss without determining the fair market value of the property. The *Roark* court stated:

"So-called 'rules' as to the proper measure of damages in a particular type of case are guides only, and should not be applied in an arbitrary, formulaic, or inflexible manner.

° ° °

To the extent that the cases cited by Defendant suggest that proof must be introduced as to the *market value* of the land immediately before and the *market value* after the injury (citation), we do not think that they reflect the preferable, less rigid, modern view." 355 N.E. 2nd at 95.

The *Roark* decision, issued 11 months after *First National Bank of Des Plaines*, apparently has guided Illinois towards the more equitable and modern view.

The *Myers v. Arnold* opinion did not involve the destruction and removal of trees. The *Myers* court noted that Illinois cases have not always clearly distinguished between situations where the injury was to the land and those wherein the injury was to an object having a value ascertainable without reference to the land.

The Claimant argues that it is seeking the amount of damages by which the value of the property was diminished by the loss of particular trees. Claimant's expert did not opine as to the sum which would be necessary to replace fully mature trees. Claimant argues that his expert testified for the express purpose of directly correlating the value of the trees to the property on which they were situated. The expert did base his opinion on size, condition, location, purpose and function the trees served relative to the property.

In essence, the Claimant's position is that its expert testified to the net loss in value to property without establishing the value of the property prior to or after the removal of the trees. This is similar to the testimony presented by the landowner in *Roark*. The expert in *Roark* estimated that the property had been depreciated by $20

an acre. The expert did not establish the market value of the property prior to or after the injury. He stated, as did Claimant's expert in the case at bar, what the net loss was to the property.

The testimony of Mr. Kramer definitely correlated his valuation of the trees to the property on which they were situated. The Court accepts Claimant's expert testimony as credible and appropriate to ascertain damages; however, another problem arises because of the assumptions made by the expert in arriving at the damages. Mr. Kramer testified that because the trees were no longer in existence, his calculations of the value of the trees were based on two assumptions. Claimant told him to assume 22 trees were removed and then measured the five remaining trees and assumed that the smallest tree and the largest tree still standing would be the extremes and all of the missing trees would fall within those two extremes. He testified that the first five diameters of trees listed on Respondent's Group Exhibit No. 1 are the diameters of the trees remaining. The first five diameters as measured in inches are 23, 22, 25, 24 and 18. The average diameter is 22.4 inches.

The job diary indicates the diameter of the trees removed ranged from 8 inches to 20 inches, with an average diameter of 16.2 inches. The Court finds the diameter of the 16 trees destroyed to be the diameters stated in Respondent's Exhibit No. 2. The average of 16.2 inches is 72.3% of the expert's assumed average of 22.4 inches.

The Court shall restore the injured party to as good a position as he held prior to the tort. (Restatement of Torts 2d, section 901.) Claimant's method of proving damages is accepted and the expert's value of the trees destroyed is discounted to arrive at a value that reflects the number and the diameter of the trees, determined by

this Court to be destroyed. Claimant arrived at a value by assuming the number of trees removed and assuming that the trees had an estimated diameter. Therefore, the Court takes $34,750, the value as it related to 22 trees, and discounts it by 72.7% to reflect the Court's finding of 16 trees. This adjusted value would be $25,263.25. The second adjustment is to discount $25,263.25 by 72.3% to reflect the finding that the average diameter of the trees removed was 16.2 inches rather than 22.4 inches assumed by the expert.

Wherefore, it is hereby ordered that Claimant is awarded $18,265.33 for loss of 16 trees with an average diameter of 16.2 inches, in full and complete satisfaction of this claim.

## OPINION

SOMMER, C.J.

This claim comes before us on a motion to reconsider filed by the Respondent in regard to an opinion of this Court filed August 8, 1991. Oral argument on the motion was held by the Court on October 26, 1992. The parties have filed briefs in regard to the motion to reconsider.

The matter before us is the value of Siberian Elm trees that were cut down on the Claimant's property by a contractor hired by and under the direction of the Illinois Department of Transportation.

The record before us is flawed, making a decision in this claim difficult. For example, it was difficult for the Court to make a finding as to the number of trees cut. The Claimant testified that 22 live trees and 1 dead tree were cut down. The Claimant's expert, who examined the site, could not determine how many trees were cut down,

as he could not find stumps for 23 trees—some of the stumps had been ground out by a stump remover. The expert probed for old roots but still could not find 23 trees; but figured the value of 23 trees in any event. The Claimant based his figure of 22 live trees on photographs not introduced into evidence and hearsay from a third party. The photographs that were entered into evidence did not show all the trees.

The Respondent's evidence of the number of trees was also subject to attack in that it consisted of two Xeroxed pages from a Department of Transportation diary listing the cut trees. The diary began with tree number 7 and ended with tree number 22. No explanation was given of the absence of the page showing the location of the trees 1 through 6.

Equally as odd, the Claimant's expert to establish value used estimated diameters for the trees that he could not find; as he admitted to finding evidence of fewer than 22 live trees.

This Court in reviewing this matter is bound by the record and will not act as an advocate for either party. Items of evidence must be properly before the Court. Simply because a party failed to introduce evidence or make an objection that was available to it is not a ground for a new trial. The standard for ordering a rehearing is that the Court "overlooked or misapprehended" points of law or fact. *See section 790.220 of Illinois Court of Claims Regulations, Ill. Adm. Code 790.220.*

We agree with the opinion's finding that 16 trees were cut, as the preponderance of the evidence establishes that at least 16 trees were cut. The Claimant did not meet his burden of proof as to the possibility of an additional seven trees having been cut. We do, however,

accept the Claimant's method of valuing the trees. No other method of valuation was entered into evidence by the Respondent; and we believe the case law then allowed for functional valuation of the trees.

We note, though it has no bearing on the current claim, that the General Assembly has passed the Wrongful Tree Cutting Act, effective January 1, 1986 (740 ILCS 185/1), which grants triple damages based on the stumpage value of wrongfully cut trees.

The Respondent supports the finding that 16 trees were cut; but then, argues that the Court proceeded to apply the wrong calculation as to the value of the trees cut. According to the Respondent, a tree's worth increases somewhat geometrically with its increase in size. The Respondent argues that this Court used a straight line computation, to reduce the average diameter of the trees from 22.4 inches to 16.2 inches. The Respondent wishes to use tables attached to an exhibit of the Respondent and the diary pages to establish a lower value, tree by tree. The Claimant argues that the tables were not properly introduced into evidence, nor was the proposed methodology of the valuation in evidence.

The Claimant's expert's direct testimony established that the square inch diameter was used in his calculation. The Respondent on cross-examination showed the expert his computations, which included the table previously referred to by the expert in his direct testimony as the standard valuation table "prepared by the United States Department of Labor Consumer Pricing" establishing a base price of "$27 per square inch cross section of trunk." The expert identified the documents as his calculations of the value of the trees. The Respondent's attorney did then introduce the calculations and the table into evidence. This was objected to by the Claimant's attorney, and rightly so.

The calculations and the table should have been introduced during the Respondent's presentation of its case. However, we find that a proper foundation for the documents, including the table was laid; and the calculations and table were properly admitted into evidence. It was unorthodox to introduce the tables and calculations into evidence upon cross-examination, but we do not find it to be reversible error, as a foundation was laid.

We find that the introduction of the diary was proper under the business records exception to the hearsay rule. The Respondent did not object to the introduction of a copy. In the oral argument, the Respondent has asked us to award a minimal amount, for which it introduced *no evidence*; or to recalculate the award. The Respondent urges a recalculated valuation of between $11,000 and $12,000. However, the Court's calculation tree by tree indicates a value of $13,200. The Court used the methodology of the Claimant's expert.

We find that the opinion of August 8, 1991, was in error when it used the wrong calculation when it reduced the average size of the trees cut. Even with reduced size, the Claimant is somewhat advantaged as the State's measurements were taken two inches from the ground rather than four inches as the Claimant's expert urged.

We, therefore, grant the Respondent's motion to reconsider; and upon reconsidering the matter find that the Claimant should have been awarded $13,200.

The Claimant, at the oral argument, asked for post-judgment interest on the award made on August 5, 1991. Our decision is not a "judgment" as the word is used in section 2—1301 of the Code of Civil Procedure (735 ILCS 5/2—1301); rather our decision is a recommendation to the General Assembly that can be dismissed, or

accepted in whole or part by that sovereign body. No one can levy on the basis of our opinion, nor does our opinion act as a lien. Interest is not payable by the State unless it is expressly named in a statute as being liable for interest. (*Doe v. State* (1988), 40 Ill. Ct. Cl. 37.) Section 2—1303 of the Code does not expressly name the State as liable for interest. Therefore, we will deny interest on this claim.

It is therefore ordered that the motion to reconsider is granted and the opinion of August 8, 1991, is reconsidered and the Claimant is awarded $13,200.